## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MICHAEL MUIR,             )
       *Plaintiff*,       )
                )    8:22-cv-01110
    v.               )
                )
UNITED STATES; et al.   )
       *Defendants*.   )

### DEFENDANT ALLEGIANT AIR, LLC'S MOTION TO DISMISS
### AND SUPPORTING MEMORANDUM OF LAW

Defendant Allegiant Air, LLC ("Allegiant"), by and through its attorneys, hereby moves to dismiss Plaintiff's Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure ("FRCP") 8(a)(2), 12(b)(2) and 12(b)(6), and in support submits this incorporated Memorandum of Law.

### <u>SUPPORTING MEMORANDUM OF LAW</u>

Using defense counsel and the federal courts as his *de facto* pro bono counsel, Plaintiff filed the Complaint, his third lawsuit in as many states, on May 13, 2022, based on injuries he allegedly sustained in the course of two TSA security screening encounters—the first at Arizona's Phoenix-Mesa Gateway Airport ("IWA") on **June 6, 2019**, and the second at Illinois's General Wayne A. Downing Peoria International Airport ("PIA") on **June 9, 2019**.

As a preliminary matter, Plaintiff's 250-page Complaint is a typical shotgun pleading that fails to comply with FRCP 8(a)(2). Additionally, the

claims against Allegiant (Claims 12, 15, 18, 19, 20, 23 and 25), must be dismissed because Plaintiff fails to allege facts sufficient to establish a *prima facie* case for personal jurisdiction over Allegiant in Florida.

Further, Plaintiff's claims against Allegiant are both time-barred and barred by *res judicata*. And in any event, his claims based on in-concert liability, the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution fail as a matter of law.

## PROCEDURAL HISTORY

This is the third lawsuit Plaintiff has filed arising out of alleged injuries and damages he sustained as a result of TSA passenger security screenings.[1] In his first two lawsuits, Plaintiff alleged injuries as a result of security screenings that occurred on August 9 and 12, 2018 at IAW and PIA and required physical pat-downs. Here, Plaintiff bases his claims on two *unobjectionable* screenings that occurred at the same airports on June 6 and 9,

---

[1] Plaintiff also filed a Consumer Complaint with the Illinois Office of the Attorney General, Consumer Protection Division on December 22, 2020 against Allegiant arising out of a June 13, 2018 internet transaction in which he purchased an airline ticket from Allegiant for roundtrip transportation between IWA and PIA. In the Consumer Complaint, Plaintiff claimed that Allegiant "committed fraud when it failed to give proper notice of the mandatory airplane boarding process, specifically the TSA threat assessment process that uses L3[Harris, Inc.]'s ["L3"] millimeter wave portal and proprietary artificial intelligence automatic target recognition ('ATR') software." In other words, Plaintiff claimed that Allegiant committed fraud because Allegiant failed to warn him about the legally mandated TSA screening process that all consumer air travelers must undergo.

2

2019 that did not require physical pat-downs. In his Complaint, Plaintiff asks this Court to take judicial notice of the prior proceedings in Arizona, Illinois and the Circuit Court of Appeals for the Seventh Circuit ("CA7"). [ECF 1], at ¶ 80. Allegiant agrees that this Court may take judicial notice of those filings.

### Arizona

Plaintiff's first action against L3 was filed in the Superior Court of the State of Arizona in Maricopa County, Case No. CV2019-013495, on December 2, 2019, *nearly six months after the TSA screenings at issue in this action*, and alleged claims based on a TSA screening that occurred at IWA on **August 9, 2018**, which resulted in a physical pat-down that caused Plaintiff physical injuries and emotional distress. L3 timely removed the case to the U.S. District Court for the District of Arizona, Case No. 2:19-cv-05887-DGC. L3 then filed a Motion to Dismiss based on FRCP 12(b)(6), arguing that Plaintiff's various state law claims as well as claims based on the Arizona Constitution failed to state a claim for which relief could be granted. Plaintiff then filed a First Amended Complaint (the "AZ FAC"). L3 again moved to dismiss the AZ FAC.

Rather than respond to L3's second motion to dismiss, Plaintiff filed, without consent from L3 or leave of court, a Second Amended Complaint (the "AZ SAC"), in which he added two new defendants—the TSA and its Administrator—and additional claims, including claims based on a screening at PIA that occurred on **August 12, 2018** and also resulted in a physical pat-

3

down.   The AZ SAC was stricken by the District Court, which found that Plaintiff's claims asserted in the AZ SAC were "clearly without merit." *See* District of Arizona, Case No. 2:19-cv-05887-DGC, [ECF 24], p. 2. Plaintiff then initiated a lawsuit in the Central District of Illinois ("CDIL") and voluntarily dismissed the Arizona action, over L3's objection.

### Illinois

Plaintiff's complaint in the CDIL, Case No. 1:20-cv-01280-JBM-JEH, was filed on July 31, 2020, and was based only on the **August 12, 2018** TSA security screening that occurred at PIA. That lawsuit named several additional defendants, including the TSA and its director, and the former Secretary of the U.S. Department of Homeland Security ("DHS") (collectively, the "Government Defendants"). *See* CDIL Case No. 1:20-cv-01280-JBM-JEH, [ECF 1]. Before any defendant appeared, Plaintiff asked the CDIL to take judicial notice of certain documents, including the booking confirmation for Plaintiff's roundtrip transportation by air from IWA to PIA on flights operated by Allegiant. *Id.* at [ECF 9]. The District Court denied Plaintiff's request on September 2, 2020, *id.* at [ECF 11], and Plaintiff filed a First Amended Complaint (the "IL FAC") on September 4, 2020, adding Allegiant as a defendant as well as claims based on the **August 9, 2018** TSA screening at IWA. *Id.* at [ECF 12].

In his IL FAC, Plaintiff alleged his rights were violated under the U.S. Constitution, the Illinois and Arizona state constitutions, various federal

statutes and common law. As to Allegiant, he alleged identical causes of action based on Negligence, Negligent Infliction of Emotional Distress ("NIED") and Intentional Infliction of Emotional Distress ("IIED"), under Illinois and Arizona law based on the common carrier-passenger relationship for its failure to warn him of or protect him from the TSA screening procedures that caused his physical injuries and emotional distress.

On November 4, 2020, Allegiant filed a Motion to Dismiss the IL FAC pursuant to FRCP 12(c) and 12(b)(6). *Id.* at [ECF 30, ECF 31]. Defendant L3 and the Government Defendants, as well as David Pekoske, filed separate motions to dismiss on various grounds. On January 22, 2021, the CDIL issued a comprehensive 40-page Order and Opinion (the "Opinion") dismissing the entire IL FAC with prejudice as to all Defendants. *See id.* at [ECF 46].

### The CDIL's Findings with respect to Allegiant

In its January 22, 2021 Opinion the CDIL granted Allegiant's Rule 12(c) Motion, in part, on the ground that the allegations in the IL FAC based on the TSA screening at IWA were barred by Illinois's two-year statute of limitations and did not relate back to the timely filed original complaint. [ECF 46], pp. 13-15. Importantly, Plaintiff argued in his opposition to Allegiant's Motion to Dismiss that the statute of limitations should have been tolled because he did not have a duty to inquire whether he had a legal cause of action based on the August 2018 screenings until *June 6, 2019*, at the earliest, when he *had an*

5

*encounter with TSA that did not result in a pat-down search. Id.* at p. 8. The CDIL rejected that argument because Plaintiff alleged he was in immediate pain during the August 2018 screenings and would have immediately known that he had suffered an injury. *Id.* at 11.

The CDIL then granted Allegiant's FRCP 12(b)(6) motion as to the remaining claims based on the PIA screening encounter, finding that, though couched in terms of various constitutional rights to privacy, due process, and freedom from unreasonable searches, the claims against Allegiant sounded in tort. [ECF 46], p. 7, n.3. They were constitutionally infirm because Plaintiff had failed to explain how the actions of Allegiant, a private entity, may be fairly attributable to a state government or the federal government. *Id.* Turning to the merits of Plaintiff's alleged tort claims for negligence and NIED against Allegiant, the CDIL made the following findings:

- Plaintiff's claims for negligence and NIED failed as a matter of law because, notwithstanding the heightened duty of care common carriers generally owe to their passengers pursuant to Restatement (2d) of Torts, §§ 314, 314A, Allegiant had *no duty to warn* Plaintiff about or explain the TSA threat assessment procedures or that they could violate his constitutional rights. [ECF 46], pp. 17-22.

- It is not only common knowledge that airline passengers must undergo TSA screening prior to boarding a flight, it is required by federal law, and American jurisprudence imposes knowledge of the law on all litigants. *Id.* at p. 19.

- Allegiant *did* warn Plaintiff regarding TSA screening in its Contract of Carriage, even though it had no duty to do so. *Id.* at pp. 19-20.

- Allegiant had no duty to warn Plaintiff that TSA might engage in

actionable misconduct during the screening process because there is no aspect of law which imposes a duty to warn of unpredictable wrongdoing at the hand of a third party. *Id.* at p. 20.

- Federal regulations governing the operations of TSA security areas emphasize the *exclusive control* that TSA exercises over those areas and confer *absolute authority* on TSA personnel within that area *to the exclusion of all other airport staff or patrons*. *Id.* at pp. 20-21.

- There is no reason to believe that Allegiant possessed any unequal knowledge about the TSA procedures and thus no basis to impose a duty to explain those procedures to Plaintiff or explain how those procedures could potentially expose or exacerbate a medical condition airline personnel also had no reason to know of. *Id.* at p. 21.

In short, the CDIL concluded that Plaintiff failed to demonstrate that Allegiant had the requisite knowledge to give him the notice he believed he was due, and without such knowledge, Allegiant had no duty to warn as a matter of law. *Id.* Further finding that Plaintiff could not amend his complaint to state facts giving rise to the duty he believed he was due, the CDIL dismissed Plaintiff's negligence and NIED claims with prejudice.

Turning to Plaintiff's IIED claims, the CDIL found that a failure to provide an explanation or warning about matters outside one's knowledge does not amount to the type of extreme or outrageous conduct necessary to predicate an IIED claim. *Id.* at p. 23. Importantly, the CDIL concluded that Allegiant took no part in the actual conduct—the TSA screening—that Plaintiff claimed caused his emotional distress. *Id.* As such:

> Given Defendant Allegiant Air's *total lack of participation* in the conduct which allegedly caused Plaintiff emotional distress, the Court finds *any amendment would be futile*. *Id.*

Based on these findings, the remaining claims against Allegiant were dismissed with prejudice and the CDIL issued its Judgment against Plaintiff on January 25, 2021. *See* [ECF 47]. Plaintiff never sought reconsideration of that ruling. Rather, on February 19, 2021, Plaintiff filed a notice of appeal to the CA7. *See* [ECF 48].

### Plaintiff's Motion for Permission to Appeal *In Forma Pauperis*

On March 9, 2021, Plaintiff filed a motion for permission to appeal *in forma pauperis*. *See* [ECF 53]. In the motion, he argued he would appeal the CDIL's Opinion and present the following questions for review: (i) whether the CDIL erred in concluding that amendment was futile; (ii) whether the CDIL erred in entering judgment in favor of all defendants; (iii) whether the CDIL erred in terminating the matter; and (iv) whether the CDIL erred in failing to grant plaintiff leave to amend before final dismissal under FRCP 12(b)(6). *Id.* However, in his Fed. R. App. P. 24 Affidavit attached to the motion, he set forth an entirely new cause of action against additional parties—namely, the Section 1983 conspiracy claims that he asserts in this Complaint. *See* [ECF 53-1]. The CDIL denied the motion and certified that the appeal was taken in bad faith. [ECF 54]. Plaintiff subsequently withdrew his motion and perfected his appeal.

### CA7

In his opening brief on appeal, Plaintiff raised only one legal argument: that he set forth a viable claim of conspiracy to deprive him of his constitutional

rights under 42 U.S.C. § 1983. *See* Case No. 21-1312, CA7 Order dated August 26, 2021, [ECF 24] at p. 3. Although the CA7 held that Plaintiff waived that argument by not presenting it in the district court, it nonetheless continued to hold that the claim was meritless. *Id.* at pp. 3-4. According to the CA7, Plaintiff did not name the state actor, Peoria County, Illinois, in the caption or body of his Illinois FAC. *Id.* at p. 4. More importantly, he never suggested in his briefs on appeal that the Peoria County sheriff's deputies, who allegedly stood by as his rights were violated, knew of any alleged infringement of Plaintiff's constitutional rights or his hidden hernia. *Id.* "For these reasons *and more*," the CA7 held, "belatedly invoking the county does nothing for Muir." *Id.* Accordingly, the CA7 affirmed the CDIL's dismissal.

Plaintiff did not appeal the CA7's Order to the U.S. Supreme Court. Instead, on May 13, 2022, Plaintiff filed the instant Complaint, which can only be characterized as a *de facto* appeal of the CA7's Order.

## LEGAL STANDARD

### I.   FRCP 8(a)—Claim for Relief

Under FRCP 8(a), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). "Shotgun pleadings violate Rule 8 . . . by failing to one degree or another to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v.*

*Shabanets*, 878 F.3d 1291 (11th Cir. 2018) (internal quotations, alterations and citation omitted). A district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds. *Id.* (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)).

## II.    FRCP 12(b)(2)—Personal Jurisdiction

A federal court seeking to exercise jurisdiction over a non-resident defendant must undertake a two-step analysis to determine whether personal jurisdiction exists. *First*, the Court must determine whether an exercise of jurisdiction is appropriate under the forum state's long-arm statute. *United Techs. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *AXA Equitable Life Ins. Co., v. Infinity Fin. Group, L.L.C.*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009); *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 500 (Fla. 1989). *Second*, the Court must examine whether the exercise of personal jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *See Mazer*, 556 F.3d at 1274.

A plaintiff who asks a court to exercise personal jurisdiction over a nonresident defendant has the initial burden of alleging facts in the complaint that are sufficient to support a *prima facie* case of jurisdiction. *Id.*; *Polski Linine Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986). If a *prima facie* case is alleged, the defendant must then rebut the

10

plaintiff's allegations in support of personal jurisdiction by pleadings and declarations. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). Where, however, a plaintiff fails to allege a *prima facie* case of personal jurisdiction, the burden shifting does not occur and a nonresident defendant need not come forward with any evidence to rebut the existence of jurisdiction and the complaint should be dismissed. *Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 Fed. App'x 843, 849 (11th Cir. 2020).

## III.   FRCP 12(b)(6)—Failure to State a Claim

Under FRCP 12(b)(6), a court must dismiss a complaint that fails to state a claim upon which relief can be granted. See FRCP 12(b)(6). A motion to dismiss under FRCP 12(b)(6) tests the legal sufficiency of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Iqbal"). Dismissal may be based on the lack of a cognizable legal theory or on a plaintiff's failure to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). When assessing a FRCP 12(b)(6) motion, a court must take as true allegations of material fact, but it need not accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action. *Iqbal*, 556 U.S. at 678. A claim can also be dismissed under FRCP 12(b)(6) based on a dispositive issue of law, like *res judicata* or a statute-of-limitations defense. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Stovall v. Secr'y*, 521 F. App'x 849, 851 (11th Cir. 2013).

11

## ARGUMENT

### I.     Plaintiff's Complaint Violates FRCP 8(a)(2)

Plaintiff's Complaint is a typical shotgun pleading that violates FRCP 8(a)(2). Courts in the Eleventh Circuit have little tolerance for shotgun pleadings. *Shabanets*, 878 F.3d at 1295 (collecting cases). As first described by the Eleventh Circuit in *T.D.S., Inc. v. Shelby Mut. Ins. Co.*, "'[s]hotgun' pleadings, [which are] calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before a jury, can be masked, are flatly forbidden by the letter, if not the spirit, of these rules." 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting). The complaint at issue in *T.D.S.* was described as "a paradigmatic shotgun pleading, containing a variety of contract and tort claims *interwoven in a haphazard fashion*." *Id.* (emphasis added).

The Eleventh Circuit has identified four rough categories of shotgun pleadings: (i) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint; (ii) a complaint replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (iii) a complaint that does not separate into a different count each cause of action or claim for relief; and (iv) a complaint asserting multiple claims against multiple defendants

without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Weiland*, 792 F.3d at 1322-23.

Here, the Complaint spans 250 pages, contains 707 numbered paragraphs, and is replete with conclusory, vague and immaterial allegations not obviously connected to any particular cause of action, *see, e.g.*, [ECF 1], at pp. 32-96. Further, many of Plaintiff's claims "reincorporate[] all paragraphs from above." *See, e.g.*, *id.* at ¶ 284, ¶ 419, ¶ 507, ¶ 553, ¶ 563, ¶ 622. The Complaint also asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *See, e.g.*, *id.* at ¶ 666 (seeking injunctive relief from "Defendants" to enjoin them from certain actions without specifying which defendant undertook which action). Accordingly, as a preliminary matter the Complaint is defective and must be dismissed. *See Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1245 (S.D. Fla. 2018).

## II.   The Complaint Fails to Allege Facts Sufficient to Establish a *Prima Facie* Case of Personal Jurisdiction over Allegiant

Separately, Plaintiff's claims against Allegiant must be dismissed for lack of personal jurisdiction. Plaintiff's Complaint fails to allege any jurisdictional facts to establish a *prima facie* case of personal jurisdiction over Allegiant. Plaintiff concedes that Allegiant is a nonresident and therefore this

Court may exercise personal jurisdiction over Allegiant only if two requirements are met: (1) the state long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment. *Fox*, 309 F. Supp. 3d at 1246 (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999)). At the pleading stage, the burden is on the plaintiff to establish a *prima facie* case of personal jurisdiction over the nonresident defendant. *In re Zantac (Ranitidine) Products Liability Litigation*, 546 F. Supp. 3d 1192, 1200 (11th Cir. 2000) (citations omitted). "A prima facie case of personal jurisdiction is established if a plaintiff presents sufficient facts, entitled to the assumption of truth and viewed in the light most favorable to the plaintiff, to withstand a motion for directed verdict." *Id*.

Here, the Complaint is based on two unobjectionable TSA security screenings that occurred outside of Florida and Plaintiff concedes Allegiant is a nonresident of Florida. Though Plaintiff does not explicitly address personal jurisdiction anywhere in his Complaint, under a heading titled "Parties," he alleges: "Defendant Allegiant Air LLC ("Allegiant") is a Nevada for-profit commercial airline, a major air carrier, a 'Covered Air Carrier' under the FAA Reauthorization Act of 2018 and 49 U.S.C. 40102(a)(2), and a 'carrier' under 14 C.F.R. Part 382." [ECF 1], ¶ 13. There is no allegation that *any* conduct alleged in the Complaint occurred in Florida. Indeed, Florida is only referenced in two (2) out of the total 707 numbered paragraphs in his Complaint. *See* [ECF

1], ¶ 7 (Plaintiff's residence), ¶12 (Defendant L3's headquarters).

Such allegations are insufficient to withstand directed verdict and fail to establish a *prima facie* case for this Court's exercise of personal jurisdiction over Allegiant. *See Diulus*, 823 Fed. App'x at 849 (affirming district court's dismissal for lack of personal jurisdiction where defendant's motion only attacked the sufficiency of the complaint); *see also Fox*, 309 F. Supp. 3d at 1246 (dismissing claims against two defendants where the amended complaint alleged only that the two defendants were Delaware corporations with their principal places of business in New York; one was the parent of the other; and the other's subsidiaries actually operated the hotel properties where the conduct complained of occurred); *Marrero v. State Farm Fire and Cas. Co.*, No. 3:20-cv-1147, 2021 WL 2555438, *3 (M.D. Fla. May 24, 2021) (slip op.), report and recommendation adopted, 2021 WL 2551627 (M.D. Fla. June 22, 2021) (recommending dismissal for lack of personal jurisdiction where only allegation in the complaint regarding specific jurisdiction was wholly conclusory and allegation that defendant was registered in the state of Florida was plainly insufficient to make out a prima facie case for general jurisdiction).

Because the Complaint wholly lacks any jurisdictional allegations regarding Allegiant, it should be dismissed for lack of personal jurisdiction.

### III.   All Applicable Claims Against Allegiant Are Time-Barred

Even if the claims against Allegiant related to the June 2019 security

screenings are not dismissed for lack of personal jurisdiction, which they must be, his applicable claims against Allegiant are time-barred.[2] Plaintiff concedes that the applicable statute of limitations is two-years, *see* [ECF 1], at ¶¶ 81-86. The fact that Plaintiff filed claims with the TSA on June 5, 2021—one day before the statute expired—does not save his untimely claims against Allegiant. Accordingly, his Complaint must be dismissed.

     **a.**    **Florida's Borrowing Statute**

Florida's borrowing statute, Fla. Stat. Ann. § 95.10, bars actions brought in Florida which arise outside of the state of Florida, and which are time-barred in the jurisdiction in which the cause of action arose. *In re Trasylol Products Liability Litigation – MDL-1928*, No. 08-MD-01928, 2011 WL 2784237, *2 (S.D. Fla. July 13, 2011) (citing *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1113 (Fla. 1987)). To determine where the cause of action arose, a court must look to see which state has the more significant relationship. *Jenkins v. Rockwood*, 820 So.2d 426, 428 (Fla. Dist. Ct. App. 2002).

Under Sections 145-146 of the Restatement (2d) of Conflict of Laws, which call for the application of the significant relationships test, "'the local law of the state where the injury occurred determines the rights and liabilities of the parties *unless* with respect to the particular issue, some other state has

---

[2] For the reasons discussed below, because Plaintiff's BIPA claims against Allegiant fail as a matter of law, the longer five year statute of limitations that applies to certain claims brought under that statute does not apply.

a more significant relationship to the parties and the occurrence.'" *Jenkins*, 820 So.2d at 427 (quoting *Jones v. Cook*, 587 So.2d 570, 571 (Fla. Dist. Ct. App. 1991)) (emphasis in original). Here, Plaintiff alleges he sustained injuries in Arizona and Illinois; and Arizona and Illinois are the places where the conduct causing those alleged injuries occurred. Florida has no relationship to Plaintiff's claims other than that Plaintiff happened to move to this state at some time after he filed his appeal of the prior action to the CA7 (*see* Case No. 21-1312, [ECF 4], Appellant's Docketing Statement), and one of the 16 named defendants happens to be headquartered in Florida. Accordingly, the two-year statute of limitations under Arizona and Illinois law apply to the conduct and claims that arise out of the Arizona and Illinois encounters, respectively, as Plaintiff himself concedes. *See* [ECF 1], ¶¶ 81-86. Because his Complaint was not filed until May 13, 2022, nearly three years after the June 6 and 9, 2019 TSA security screenings, his Complaint is time barred.

### b.  Plaintiff's Notice of Claim to the TSA Does Not Save Plaintiff's Untimely Complaint

Plaintiff argues that his Complaint is timely because he filed claims with the TSA on June 5, 2021, based on the June 6 and 9, 2019 TSA screenings, which were denied on December 2, 2021. Thus, he satisfied the prerequisites of 28 U.S.C. § 2675 and he timely brought the action against the U.S. within 6 months of the final denial as required under 28 U.S.C. § 2401(b). Plaintiff

claims that he gets the benefit of a longer statute of limitations as to the claims against the additional defendants because claims for concert of action tort liability under the Restatement (2d) of Torts § 876 are not independent causes of action under Arizona or Illinois law and must be pled in accordance with the Federal Tort Claims Act ("FTCA"). Plaintiff is mistaken.

In FTCA cases, the U.S. is the only proper defendant. FTCA cases thus cannot be brought against private defendants, such as Allegiant. The fact that Plaintiff's claims may be timely as against the U.S. under the FTCA does not extend the statute of limitations with respect to his claims against Allegiant, which were filed more than two years after the TSA security screenings at issue. What Muir should have done, which he did not, was timely file his claims against the named defendants other than the U.S. and then seek leave to amend to add the U.S. as a defendant and his claims pursuant to the FTCA when they became ripe, *i.e.*, within six months of the TSA's denial of his claims. *See, e.g.*, *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1033 (9th Cir. 2013), *aff'd and remanded sub nom. United States v. Wong*, 575 U.S. 402 (2015). Having failed to timely file his non-FTCA claims against Allegiant on or before June 6, 2021, Plaintiff's claims are barred and must be dismissed.

## IV.   *Res Judicata* Bars Plaintiff's Claims Against Allegiant

Even if not time-barred, which they are, the claims against Allegiant are barred by *res judicata*. Following a full and fair opportunity to litigate, *res*

*judicata* protects a party's adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. *Montana v. United States*, 440 U.S. 147, 153-54 (1979). It is an expression of the policy of the federal court's preferring finality, *i.e.*, that litigation at some time must become final. *Curry v. Baker*, 802 F.2d 1302, 1309-10 (11th Cir. 1986).

In the interests of preserving judicial time and resources and avoiding repetitive argument, Allegiant joins, adopts and incorporates L3's Motion to Dismiss on the grounds of *res judicata* and collateral estoppel, *see* [ECF 27], Arguments B and C, as if fully set forth herein. Allegiant writes separately to address the nature of the claims and causes of action asserted against Allegiant in the prior and instant actions and the issue-preclusive rulings that were issued with respect to Allegiant.

### a.   Plaintiff's Claims in Both Actions Flow from the Common Carrier-Passenger Relationship

Plaintiff's lawsuit based on the August 2018 TSA screenings involved the same claims and causes of action against Allegiant as the instant suit based on the June 2019 TSA screenings for purposes of the fourth element of *res judicata*, or claim preclusion. Aside from the timing of the occurrences, Plaintiff's allegations flow from the common carrier-passenger relationship

between Allegiant and Plaintiff. The CDIL found that Allegiant did not breach any duty it owed to Plaintiff based on that "special relationship" and had no duty to warn him about the TSA screening procedures (even though it did, in fact, warn him of the TSA screenings in its Contact of Carriage). And the judgment of the CDIL that Plaintiff had not, and could not, establish Allegiant's liability with respect to the August 2018 TSA screenings necessarily precludes any claim that Allegiant could be held liable for any injury related to the June 2019 screenings—which did not result in any physical injury to Plaintiff. Accordingly, like with the claims against L3, the fourth element of *res judicata* is established with respect to the claims against Allegiant in the instant action.

### b.  The Rulings Issued by the CDIL and the Seventh Circuit with respect to Allegiant are Barred by Collateral Estoppel

In addition to being barred by *res judicata*, the rulings issued by the CDIL—that Allegiant had no duty to warn Plaintiff of the TSA screening procedures, had no knowledge of the TSA threat assessment procedures, had no knowledge of Plaintiff's hidden disorder, and was excluded from the TSA screenings altogether—and the ruling of the Seventh Circuit—that Plaintiff could not allege a meritorious 42 U.S.C. § 1983 claim—are issue-preclusive as to Plaintiff's claims against Allegiant in this case. Accordingly, collateral estoppel bars Plaintiff from re-litigating those issues in this Court.

## V.   Plaintiff's Specific Claims Fail as a Matter of Law

### a.   Claims 12 and 15—In-Concert Liability

The only way that Plaintiff alleges Allegiant participated in the purported conspiracy was through its collection of a 9/11 Security Fee and the fee's remittance to the DHS. That fact hardly establishes a conspiracy or Allegiant's voluntary or willful participation in one. In Claim 12, Plaintiff alleges that:

- "Allegiant made a necessary contribution to the underlying scheme as 49 C.F.R. § 1510.9(c) provides that Allegiant is solely liable to TSA for the [security service] fee and must remit the fee as required in § 1510.13 regardless of whether or not the security fee is collected from the passenger." [ECF 1], ¶ 425;

- "Allegiant is the main commercial airline serving IWA. Therefore, Allegiant remits a large percentage of the total security service fees that fund the TSA checkpoint. Therefore, Defendant Allegiant's remittance of the fees is, by definition, a necessary contribution to the TSA checkpoint scheme at IWA because the AIT passenger screening scheme would not exist at IWA without Defendant Allegiant's significant funding." *Id.* at ¶ 426;

- "Defendant Allegiant's participation in the scheme was willful because operating a commercial airline serving IWA is a choice, and under 49 C.F.R. § 1510.13(b), profiting from the scheme by retaining accrued interest on collected security service fees is also [a] choice Defendant Allegiant willfully made." *Id.* at ¶ 427.

Plaintiff makes the same conclusory allegations with respect to Allegiant's operations at PIA in Claim 15. *See id.* at ¶¶ 476-478.

Allegiant has found no authority supporting or even suggesting

21

Plaintiff's assertion that an airline's compliance with this regulation constitutes its willful participation in a conspiracy to violate an individual's constitutional rights. That is not surprising because every airline—not just Allegiant—is obligated to comply with this regulation which is required by law.

Other than referencing Allegiant's collection and remittance of a security fee to DHS, *as required by the federal regulatory scheme*, Plaintiff has made *no allegation* that Allegiant conspired with the *state actors* named in his Complaint to deprive him of his constitutional rights. *See, e.g.*, *Farrar v. McNesby*, 639 F. App'x 903, 906-07 (3d Cir. 2016) (vague allegations of conspiracy against private defendants, including airlines, did not satisfy plausibility standard of Rule 12(b)(6) where, *inter alia*, plaintiff failed to set forth facts that would allow one to infer that defendants entered into an agreement for the purpose of targeting plaintiff's protected rights); *Diabate v. Delta Airline*, 13-CV-0918, 2014 WL 48001, *10 (D. Minn. Jan. 7, 2014) (denying *pro se* plaintiff's motion for leave to amend to assert conspiracy between U.S. Customs and Border Patrol, Delta Airline and TSA as futile where plaintiff does not assert any facts to suggest that such a conspiracy exists).

Here, Plaintiff does not—and cannot—allege that Allegiant had any direct involvement in his security screening at the TSA security checkpoint. The TSA security screening checkpoint is considered a purely "federal facility," *see*

*Narvaez v. American Airlines, Inc.*, No. 09-CIV-6397, 2010 WL 5072114, *2 (S.D.N.Y. Dec. 13, 2010)), and federal regulations explicitly prohibit Allegiant from interfering with the security screening process, *see Hogan v. Northwest Airlines, Inc.*, No. 11-cv-14888, 2013 WL 607852, *5 n.7 (S.D. Mich. Feb. 19, 2013). Accordingly, Plaintiff's belated allegations regarding Allegiant's supposed participation in the conjured-up conspiracy fail as a matter of law.

> **b.   BIPA Does Not Apply Against Allegiant—Claims 18 through 20 Must be Dismissed**

Plaintiff's claims based on BIPA, asserted in Counts 18 through 20, also fail as a matter of law for the reasons set forth in L3's Motion to Dismiss. Even if Plaintiff's "biometric information" was collected during the TSA body scan, which it was not, the claims against Allegiant can be summarily rejected because Allegiant takes *no part* in the TSA screenings as the CDIL correctly found. *See* Case No. 1:20-cv-01280-JBM-JEH, [ECF 46], at p. 23. Thus, Plaintiff's BIPA claims fail as a matter of law.

> **c.   Claim 23 Must be Dismissed because Allegiant Cannot Discriminate Based on a Hidden Disability**

Plaintiff's claims against Allegiant under the ADA also fail as a matter of law because Plaintiff's alleged disability is "hidden." It follows that Allegiant cannot intentionally discriminate against Plaintiff on the basis of disability that Allegiant does not know he has. Accordingly, Claim 23 should be dismissed with prejudice as well.

### d.    Claim 25 against Allegiant Must Be Dismissed

Plaintiff names Allegiant in the heading for Claim 25, seeking injunctive relief for violations of the U.S. Constitution, but does not specifically include Allegiant in ¶ 649, setting forth the defendants against whom the claim is made. Even if Plaintiff intended to include Allegiant in this claim, his claim fails for the reasons discussed, *supra*, with respect to Claims 12 and 15. Claim 25 should be dismissed with prejudice.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Allegiant respectfully requests this Court to dismiss the Complaint with prejudice, and for such further relief deemed just.

Dated: August 1, 2022          Respectfully submitted,

KMA ZUCKERT LLC

*/s/ Marnie A. Holz*
One of the Attorneys for Defendant,
ALLEGIANT AIR, LLC

Nicholas E. Pantelopoulos (Bar: 0103751)
KMA ZUCKERT LLC
355 Alhambra Circle, Suite 1201
Coral Gables, Florida 33134
Telephone: (305) 506-2052
Facsimile: (305) 675-7606
nep@kmazuckert.com

Keith S. Yamaguchi (*pro hac vice*)
Marnie A. Holz(*pro hac vice*)
KMA ZUCKERT LLC

200 W. Madison Street, 16th Floor
Chicago, Illinois 60606
Telephone: (312) 345-3000
Facsimile: (312) 345-3119
kyamaguchi@kmazuckert.com
mholz@kmazuckert.com

## **Local Rule 3.01(g) Certification**

I, Nicholas E. Pantelopoulos, one of the attorneys for Defendant Allegiant Air, LLC, hereby certify that I met and conferred with Plaintiff Michael Muir on July 29, 2022. We spoke extensively via telephone by which we discussed Allegiant's defenses and each of the grounds for Allegiant's current Motion to Dismiss. We were unable to agree on a resolution on any part of the instant Motion, necessitating the instant filing.

*/s/ Nicholas E. Pantelopoulos*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing thereby transmitting a Notice of Electronic Filing to all CM/ECF registrants. With a copy sent via U.S. Mail and email to: Michael Muir, P.O. Box 1791, Sarasota, FL 34230, (712) 309-6121, muirone@yahoo.com.

*/s/Marnie A. Holz*