**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

MICHAEL MUIR, ) 8:22-cv-01110
*Plaintiff*, )
v. )
UNITED STATES; et al. )
*Defendants*. )

**PLAINTIFF'S RESPONSE TO DEFENDANT L3HARRIS TECHNOLOGIES, INC.'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Michael Muir ("Muir") hereby opposes Defendant L3 Harris Technologies, Inc.'s Motion to Dismiss [ECF 27] and in support submits this incorporated memorandum of law.

**MEMORANDUM OF LAW**

Defendant L3Harris Technologies, Inc. ("L3") must remain a party to this lawsuit because its conduct is inescapably intertwined with the federal government Defendants' conduct at the TSA Checkpoint, Muir's § 876 tort claims against Defendant L3 are not based on the breach of any duty owed to him by Defendant L3, and Defendant L3 has failed to assert a valid defense.

## I. INTRODUCTION

The main issues in this case are how artificial intelligence changes how people interact with each other (TSA TSO's take orders from an unmonitored,

unreviewable A.I., which, due to the laws of computer science, treats air travelers like baggage instead of human beings and ensures that Muir will always be indifferently dehumanized and brutalized by human hands at the TSA Checkpoint if he becomes symptomatic at his right groin due to his disability) and how the A.I. interacting with people might cause those people to hurt others (the "Cascade effect", which happened to Muir and will continue to happen to Muir) and this entire course of litigation could have been easily avoided if Defendants would have simply warned Muir of their certain knowledge and stated, with regard to Defendant L3's AIT: "Warning: Encounters with this device may reveal private health information, including hidden disabilities." Instead of these simple thirteen words, Muir was forced to type over sixty thousand words in the instant Complaint just to have a chance to use the TSA Checkpoint, which is not ADA compliant.

Defendants were required to notify Muir that the AIT passenger screening process was extralegal to U.S. law so that he could avoid it, which he would have done, and has done, since August 10, 2019. Muir did nothing wrong and it's wrong that he is denied, through a very serious chilling effect, use of the TSA Checkpoint, solely because of his qualified disability.

And it wasn't until May 18, 2021, in the "Joint Arguments" section of Defendants' "Joint Brief for the Appellees" in Seventh Circuit Court of Appeals Case No. 21-1312 that Defendants clearly represented that "[t]he

fact that Plaintiff [Muir] is only selected for a physical pat-down when he becomes symptomatic establishes that… L3's screening technology is effective in detecting anomalies…" (Case No. 21-1312, Doc. 20, p. 40).

This deeply-flawed belief is the reason that Muir is wrongfully denied the benefits of the TSA Checkpoint solely due to his qualified disability and the reason why the instant Complaint (TSA Claim Nos. 2021071271840 and 2021071271858, filed just eighteen days after May 18, 2021 on June 5, 2021) is proper and necessary and the only way Muir can legally regain his ability to travel between the several states by air. Muir would have moved the Court for leave to amend as a Qui Tam complaint under the False Claims Act (31 U.S.C. § 3730) because the issues in this case concern every United States citizen and Muir believes he has brought a significant allegation of fraud that would have otherwise avoided detection to the Court's and Middle District of Florida's attention and, using true copies of official United States government documents, stated with particularity how the citizens of the United States were being contractually defrauded in an ongoing manner by Defendant L3 and Defendant TSA because the AIT millimeter wave scanner security portal configuration in use at TSA Checkpoints at commercial airports in the United States under the SAFETY Act is not insured by a private insurance carrier as required by the SAFETY Act regulations, which, against the will of Congress, leaves any victims of an aviation terrorist attack completely uninsured.

But it is unclear how a False Claims Act claim could proceed on behalf of the United States when the United States is also a Defendant as 31 U.S.C. § 3730(e)(3) appears to bar such actions. Therefore, contrary to Defendant L3's assertion that this case is "duplicative and frivolous", it is clear that the First and Fourteenth Amendment, negligence, and abnormally dangerous activity claims (which are the foundation of the instant FTCA Complaint and, for reasons related to the nature of time and the Gregorian calendar, could not have been brought when Muir filed his First Amended Complaint in Central District of Illinois Case No. 1:20-cv-01280 on September 8, 2020) have far-reaching future implications for the travelling public and must be decided by this Court because the artificial intelligence "cat" has been "let out of the bag", and, like toothpaste from the tube, there's no putting it back in.

## II. ARGUMENT

Previous litigation between the parties is about the human TSA TSOs' hands indifferently touching Muir against his will and causing him severe emotional pain and severe physical pain at the exact site of his medical emergency (his right groin hernia) in August 2018. The instant Complaint is about the long-term psychological damages to Muir (specifically the shocking sensations of colored geometric physical invasion he experienced) as a result of Defendants' abnormally dangerous use of an unmonitored, unreviewable, uninsured artificial intelligence "puppeteer" to violate Muir's person and use

his private health information to unilaterally direct the physical hands of the human TSOs at TSA Checkpoints at airports in June 2019, in the present, and unfortunately for Muir and other similarly-situated passengers with hidden disabilities, in the foreseeable future.

**A. Claim-Splitting**

Muir did not split the cause of action because essential facts necessary to plead the elements of a valid FTCA claim against Defendant United States for abnormally dangerous activity and negligence based on the failure to train the artificial intelligence used during AIT passenger screening in June 2019 (the basis of this lawsuit) did not exist until after December 2, 2019 when Muir filed his first lawsuit against Defendant L3 in Arizona state court, and still did not exist until well after September 8, 2020 when Muir filed his First Amended Complaint in the Central District of Illinois. The timeline of relevant and essential information revelation is as follows:

On March 20, 2020, Defendant L3 represented, for the very first time, anywhere, that its millimeter wave scanner was "authorized and designed to detect objects located directly beneath the surface of the skin" (*see* Complaint, Attachment 1, Case 2:19-cv-05887-DGC, Doc. 19, filing system p. 6).

On December 3, 2020, DHS published its "Artificial Intelligence Strategy" and the White House issued Executive Order 13960, which confirmed publicly, for the very first time, that Defendants did not have

artificial intelligence standards of care or policies and procedures in place for the use of artificial intelligence as they do not exist and are still being formulated by world governments.

On December 17, 2020, Defendant L3 represented, for the first time, that, per the "Terms and Conditions" of the contract, it did not have a SAFETY Act Designation or Certification for the configuration of the AIT in use in the State of Illinois (specifically at PIA).

On May 18, 2021, Defendant TSA represented, for the first time ever, that the September 17, 2010 order regarding the use of AIT in passenger screening was in fact still in effect in August 2018, despite the privacy protection amendment passed by Congress on February 14, 2012.

None of these essential facts could be known before the respective dates and Muir used the entire allowable limitations period under the FTCA to investigate his June 2019 TSA claims. Following Defendant L3's "legal advice" with regard to federal claims handling (references to claim-splitting state vs. federal claims are irrelevant in the instant case because while claims against Defendant L3 are brought under state law, the claims are actually only brought under federal law, the FTCA, which just happens to apply state tort law based on the laws of the place where the incident occurred, which in Arizona and Illinois includes Restatement of Torts § 876) would have unjustly precluded Muir's viable FTCA claims presentation to

TSA on June 5, 2021 through an unsupported shortening of the statute of limitations set forth in 28 U.S.C. § 2401(b) because relevant and necessary fact disclosures did not take place until well after Defendant L3 asserts Muir "should" have filed his claims. Attempts by Defendants to shorten relevant statutes of limitations without express authorization are a common theme in this case and the Court must affirm Muir's right under the United States Constitution Supremacy Clause to utilize the full FTCA claims investigation period.

**B. Res Judicata**

Prior cases based on the August 2018 occurrences do not involve the same claims or causes of action set forth in the instant Complaint. Dates of occurrence are operative facts. Operative facts regarding Defendants' conduct in June 2019 cannot be the same as operative facts regarding Defendants' conduct in August 2018 because they took place in entirely different months and entirely different calendar years.

This is a fatal flaw in Defendant L3's *res judicata* argument because the substance of the instant action is not and cannot be based on the same nucleus of operative facts because August 2018 is not, and cannot be June 2019, just as TSA Claim Nos. 2019101363533 and 2019091962941, filed in September 2019 regarding the occurrences of August 9, 2018 and August 12, 2018 respectively, are not and cannot be TSA Claim Nos. 2021071271840 and

2021071271858, filed together on June 5, 2021 regarding the occurrences of June 6, 2019 and June 9, 2019 respectively.

The Honorable Court in the Central District of Illinois stated, with regard to Muir's August 2018 claims: "Though the two encounters with TSA were similar and resulted in similar injuries, they were two separate encounters on separate days in different states and presumably involving different TSA agents; they therefore cannot be characterized as the same transaction or occurrence. *See Mayle v. Felix*, 545 U.S. 644, 659 (2005)." (*See* Case No. 1:20-cv-01280, Doc. 46, p. 15).

Therefore, it stands to reason that if Muir's August 9, 2018 and August 12, 2018 encounters could not be characterized as the same transaction or occurrence, then Muir's encounters with Defendants on June 6, 2019 and June 9, 2019 cannot be characterized as the same transaction or occurrence because they occurred in different calendar years than the transactions or occurrences in August 2018, and because the essential operative facts to Muir's FTCA claims against Defendant United States could not have been alleged before September 8, 2020, *res judicata* does not apply to claims in the instant Complaint.

**C. Collateral Estoppel**

The issues at stake in the instant action are different from issues litigated in prior actions and have never been brought or litigated because it

was not possible before December 17, 2020 (see Attachment 2, SAFETY Act Designation and Certification for use at PIA first submitted on the docket), at the very earliest. Specifically: Muir's Petition for a Writ of Digital Habeas Corpus (Defendants stated "when an individual was identified as a possible security threat and subsequently cleared, records will be destroyed seven years after completion of the security threat assessment" *see* Federal Register, Vol. 79, No. 154, Monday, August 11, 2014, p. 46865-46866, emphasis added - Muir was identified as a possible security threat during TSA AIT passenger screening in August 2018, but not in June 2019, and Muir could not know that the threat assessment contained private health information until Defendant L3 represented, for the first time ever, on March 20, 2020, that the millimeter wave scanner in use was in fact designed to detect material beneath the surface of the skin, *see* Complaint, Attachment 1, p. 6); Impermissible Construction of 49 U.S.C § 44901 (due to abnormally dangerous activity using unmonitored, uninsured A.I. which could not have been known before December 17, 2020); First Amendment Constitutional Challenge to 49 U.S.C. § 46110 could not be brought until Muir's Section 504 claims were unconstitutionally denied without being heard on the merits; Fourteenth Amendment Equal Protection under 29 U.S.C. § 794 could not be pleaded until Muir could demonstrate the unlawful AIT configuration and unauthorized, uninsured A.I. use); negligence (failure to train the A.I. on

human disability because it is impossible) and abnormally dangerous activity (using artificial intelligence with no standard of care) issues were not and could not have been raised in the previous action based on the timeline.

Muir advances no claims in the instant Complaint based on Defendant L3's duty to warn as all claims are intentional torts brought under the FTCA and § 876 which do not require a duty to Muir to be actionable, Muir's tort claims are unrelated to Defendant L3's lack of knowledge of Muir's hidden physical disability and are based solely on the TSA AIT passenger screening software application stack, and because "the defendants are all federal agents or private actors"… "§ 1983 is not in play" (*see* Seventh Circuit Court of Appeals Case No. 21-1312 Decision, p. 4) and is totally unrelated to § 876.

Therefore, because none of the issues central to the instant Complaint have been raised, contested, or submitted, collateral estoppel does not apply.

**D. Continuing Harms**

Muir suffered definite psychological injuries in 2019, which are different from, but obviously related to, his injuries in 2018, and which are actionable in Illinois as the negligent infliction of emotional distress (*see* Complaint, Claim 9). Instigation of the creation of the Shadow in Muir's psyche through conduct in Arizona on August 9, 2018 (the first time anyone other than Muir had ever touched his right groin hernia, let alone during a serious medical emergency) and in Illinois on August 12, 2018 (coercing Muir

to again consent against his will to his own brutalization at his weakest moment) is different from Muir living with the disturbing psychological and physical effects of living with the Shadow inside him after September 8, 2020, which he could not have possibly predicted when its arrival manifested on August 10, 2019 in the lower right corner of his vision due to the trigger events of his unconstitutional, tortious, deliberately indifferent, abnormally dangerous and negligent encounter with Defendants' A.I. on June 6, 2019 and June 9, 2019.

The Court in the Central District of Illinois concluded, with regard to Muir's 2018 claims, that: "this case falls in the sudden, traumatic event category… As Plaintiff was clearly aware of both the cause and some extent of his alleged injuries in August 2018" (*see* Central District of Illinois Case No. 1:20-cv-01280, Doc. 46, p.12).

Muir's insidious, latent onset psychological injuries first appeared on August 10, 2019, but Muir was not aware, and could not be aware, that he would be physically invaded by an electric, geometric force and that he would be able to taste it inside him. This is a central reason why the instant lawsuit is different from the 2018 actions. Muir cannot heal with this thing in him.

**E. Muir has stated valid claim against Defendant L3**

Defendant L3's arguments in this section fail for the following reasons: (1) A duty to Muir is not an element of Muir's intentional tort claims against

Defendant L3, and Defendant L3 is not named in Claim 9, which does require a duty. (2) 42 U.S.C. § 1983 and state officials have nothing to do with this case, and Muir's in-concert liability claims are all brought under Restatement (2d) of Torts § 876. (3) While it is true that Defendant TSA was in possession of the AIT at all times, it is also true that Defendant L3 made, modified and maintained the advanced technology tools for Defendant United States and Defendant TSA, and the memorialization and potential immortalization of Muir's dehumanizing trauma events which occurred in August 2018 are contained completely within Defendant L3's proprietary computer code language, which makes it inescapably intertwined with Defendant United States in this action as Muir's digital full-body avatars exist only in Defendant L3's code and can only be accessed with the proprietary decryption key. (4) With regard to BIPA, the AIT scan of Muir's hand and face geometry is a textbook example of "any information, regardless of how it is captured, converted, stored or shared, based on an individual's biometric identifier used to identify an individual". Muir submits that the ratio of the length of the bones of the hand is unique to each individual and this can most definitely be used to identify Muir, as too can the millimeter wave scan of his face geometry. (5) With regard to Title II of the ADA, the correct standard for custodial control discrimination, such as AIT passenger screening, is deliberate indifference (see Complaint, p. 203). As Muir has demonstrated,

Defendants had ample time to reflect on their decision to replace human TSOs with artificial intelligence, and knew or should have known with substantial certainty that A.I. cannot recognize human disability, which made upholding 29 U.S.C. § 794 at the TSA Checkpoint totally impossible. Also, Muir's claims are not focused so much on discrimination as much as denial of use of the TSA Checkpoint through a substantial chilling effect under 29 U.S.C. § 794 and the Fourteenth Amendment. (6) Defendant L3 can and must be enjoined to return Muir's private property passenger screening data code representing his private health information beneath the surface of his skin because it has been less than seven years since August 2018.

**F. Statute of Limitations**

All tort claims against Defendant L3 are brought under Restatement (2d) of Torts § 876. Because a claim brought under § 876 is not a cause of action in Arizona or Illinois, Muir could not file an action or any claims before, or independent of, his FTCA claim against Defendant United States.

Therefore, there is a conflict of law, and based on the Supremacy Clause, U.S. Const. art. VI, cl. 2., United States Code takes priority (*see* Complaint p. 30-31), 28 U.S.C. §§ 1346(b), 2671 *et seq.* is the controlling authority for the instant case, and all tort claims against Defendant L3 brought under Restatement (2d) of Torts § 876 are timely because all tort claims against Defendant United States under FTCA are proper.

**G. SAFETY Act**

Defendant L3 is not entitled to SAFETY Act protections because it cannot produce, based on the "Terms and Conditions", a SAFETY Act Designation or Certification for the configuration of the millimeter wave security portal in use at IWA and PIA. Also, the Court in the Central District of Illinois chose not to rule on Defendant L3's SAFETY Act defense (*see* Central District of Illinois Case No. 1:20-cv-01280, Doc. 46, p. 37), and the Seventh Circuit Court of Appeals ignored it altogether in its August 26, 2021 decision (*see* Seventh Circuit Court of Appeals Case No. 21-1312, Doc. 20, p. 52-53).

**III. CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff Michael Muir respectfully requests that this Court deny Defendant L3's Motion to Dismiss.

Dated: August 22, 2022

By: MICHAEL MUIR, *PRO SE*

_s/Michael Muir_____________

Michael Muir
P.O. Box 1791
Sarasota, FL 34230
(712) 309-6121
muirone@yahoo.com