IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MICHAEL MUIR, ) | |
| ) | 8:22-cv-01110 |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES; et al. ) | |
| ) | |
| *Defendants*. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT ALLEGIANT AIR, LLC'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Michael Muir ("Muir") hereby opposes Defendant Allegiant Air, LLC's Motion to Dismiss [ECF 28] and in support submits this incorporated memorandum of law.

### SUPPORTING MEMORANDUM OF LAW

Defendant Allegiant Air, LLC ("Allegiant") must remain a party to this lawsuit because its voluntary conduct is inescapably intertwined with the federal government Defendants' conduct at the TSA Checkpoint, Muir cannot access the TSA Checkpoint without making a contract for carriage with Defendant Allegiant, Muir's § 876 tort claims against Defendant Allegiant have not been previously litigated, Muir can establish a *prima facie* case for personal jurisdiction through a Rule 12(e) more definite statement or repleader, and Defendant Allegiant has failed to assert a valid defense.

# INTRODUCTION

Muir understands that as the party challenging the unexamined status quo, he has the burden of proving that 49 C.F.R. Part 1540 violates United States law, and that Defendant Allegiant aided in the violation, and Muir has demonstrated that, based on the facts of the TSA Checkpoint AIT passenger screening program, Defendant Allegiant has in-concert liability in this lawsuit because it is an indispensable part of the scheme. And even though this lawsuit touches on delicate topics, it is illogical to conclude that this litigation could threaten the safety of air passengers because Muir has demonstrated, using official government documents, that contrary to TSA Administrator Pistole's unambiguous assertions, the AIT device in use at IWA and PIA definitely scans and analyzes and searches computer bit information representing passengers' private health information regarding human tissue beneath the surface of the skin, knowledge of which would actually make air travelers "feel" safer knowing what the process actually entailed, because "body packing" under this regime is clearly discoverable.

The fact that the AIT searches body cavities came as accepted fact when Muir raised his problem with Florida's 16th District Congressman Vern Buchanan's Field Representative and TSA "go-between" Mr. Dave Sarney. In an in-person meeting on April 21, 2022 at 111 South Orange Street in Sarasota, Florida, Mr. Sarney asserted that TSA is searching for "body

2

packing" and offered to get Muir an accommodation at the TSA Checkpoint using a handheld magnetometer. This was not satisfactory because it is impossible for anybody to get an accommodation with regard to the artificial intelligence algorithm, and Mr. Sarney's advice for Muir to "bring a doctor's note" is both ridiculous and dangerous because it is undisputed that all ATR threat alarms <u>must</u> be resolved with a physical pat-down, and a "doctor's note" does absolutely nothing for Muir because it is undisputed that a qualified disability is <u>not</u> a valid reason to end a pat-down search.

Defendant Allegiant raised consumer fraud (*see* Doc. 28, p. 2, n.1) and Muir will demonstrate why he filed his Consumer Complaint with the Illinois Office of the Attorney General Consumer Protection Division on December 22, 2020, and why Defendant Allegiant can and must be enjoined from continuing to assert paragraph 125 of the "Contract of Carriage".

Fraud: "A false representation of a matter of fact—whether by words or by conduct, by false or misleading allegations, or by concealment of what should have been disclosed—that deceives and is intended to deceive another so that the individual will act upon it to her or his legal injury". Fraud must be proved by showing that the defendant's actions involved five separate elements: (1) a false statement of a material fact, (2) knowledge on the part of the defendant that the statement is untrue, (3) intent on the part of the defendant to deceive the alleged victim, (4) justifiable reliance by the alleged

victim on the statement, and (5) injury to the alleged victim as a result. *See* https://legal-dictionary.thefreedictionary.com/Fraud

(1) Defendant Allegiant's "Contract of Carriage", paragraph number 125 states: "All transportation is sold and all carriage is performed subject to compliance with all applicable laws… many of which are not specified herein but are nonetheless binding on Carrier and all passengers." (*see* Central District of Illinois Case No. 1:20-cv-01280, Doc. 31-1, p. 15). This is a false statement of a material fact because the United States Constitution is the supreme law of the land and Muir has demonstrated that the use of A.I. as the final decision-maker in the AIT passenger screening threat assessment process, which is a non-negotiable term of the Contract of Carriage, makes compliance with 29 U.S.C. 794 and the Equal Protection Clause technically impossible. Therefore, paragraph 125 is a false representation.

(2) Defendant Allegiant turned a blind eye to the important and specific technical details (material change from "visual image" to "internal code") of the administration of 49 C.F.R. Part 1540 as a mandatory element of its Contract of Carriage, and because willful blindness is not a valid reason for a lack of knowledge when Defendant Allegiant had a duty to Muir (and all similarly-situated passengers) to inquire based on the common carrier – passenger special relationship, this is concealment of relevant information that should have been disclosed as a part of the Contract of Carriage.

4

(3) Defendant Allegiant intended to deceive Muir because Defendant Allegiant is a soulless corporate person with an insatiable demand for profit, and its fiduciary duty to shareholders to maximize value and return on investment (which directly contradicts its duty to inquire about the specific conditions of the TSA Checkpoint advanced imaging technology passenger security screening threat assessment process which violate U.S. law) requires Defendant Allegiant to deceive Muir because this irreconcilable conflict requires Defendant Allegiant to turn a blind eye to the abnormally dangerous use of unmonitored A.I. during the passenger screening threat assessment.

(4) Muir justifiably relied and relies on Allegiant's representations in the "Contract of Carriage" because he is required to follow all applicable laws and regulations governing the highly-regulated Contract of Carriage.

(5) Muir was not only injured as a result of Defendant Allegiant's fraud, but he continues to face severe injury every time he books a ticket with the mistaken belief, based solely on the contract, that his rights will be upheld.

A common theme in this case is the private defendants willingly accepting the many benefits that come with operating a program with the United States government, but then actively deflecting and denying any and all responsibility for their parts in the federal program. Because Defendant Allegiant profited greatly from its conduct, it must be held responsible for its part in the TSA Checkpoint AIT passenger screening scheme.

## ARGUMENT

### I.   FRCP 8(a)(2)

The instant Complaint is not a typical "shotgun pleading" because it is a meticulously-cited roadmap to Defendants' unlawful and ultrahazardous activity described with particularity down to the millimeter, and because Muir's pleadings are clearly not calculated to confuse the Court because the Complaint included a Table of Contents, was not interwoven in a haphazard fashion, and no reasonable person could conclude that attempting to confuse a federal District Judge would be a good idea when trying to plead a novel, highly-complex advanced technology and A.I. case to that very same Court.

Also, it is notable that Defendant L3 continued to assert the SAFETY Act defense when it knew that the configuration of the AIT device in use at IWA and PIA was not described by "Exhibit A" (*see* Attachment 2), and Defendant Allegiant had difficulty locating the current applicable law in the Central District of Illinois (*see* Case 1:20-cv-1280, Doc. 46, p. 16, n. 8), which would indicate that it has in fact been not Plaintiff, but Defendants who have made representations that could confuse the Court.

Any misunderstandings with regard to the pleadings can be cured with a more definite statement under FRCP Rule 12(e), or through repleader of the Complaint after the Federal Defendants respond by October 7, 2022. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127-28 (11th Cir. 2014).

## II.  *Prima Facie* **Personal Jurisdiction over Defendant Allegiant**

Muir can make a more definite statement under FRCP Rule 12(e) with regard to paragraph 13 of the Complaint to include Allegiant's significant presence at seven commercial airports in Florida, including PIE in Saint Petersburg, which Muir should be able to use to get to PIA in Peoria, IL, and Allegiant's prior activity in Florida Courts and Federal Courts in the state of Florida.

## III.  **Muir's Claims are Timely**

All tort claims against Defendant Allegiant are brought under Restatement (2d) of Torts § 876. Because a claim brought under § 876 is not a cause of action in Arizona or Illinois, Muir <u>could not</u> file an action or any claims before, or independent of, his FTCA claim against Defendant United States, because there was nothing to file.

Therefore, there is a conflict of law, and based on the Supremacy Clause, U.S. Const. art. VI, cl. 2., federal statutes are superior, United States Code takes priority (*see* Complaint p. 30-31), 28 U.S.C. §§ 1346(b), 2671 *et seq.* is the controlling authority for the instant case, and based on the well-defined administrative claims process clearly detailed in FTCA, all in-concert liability tort claims against Defendant Allegiant brought under Restatement (2d) of Torts § 876 are timely because all tort claims against Defendant United States brought under the FTCA are timely and proper.

7

## IV. *Res Judicata* is Inapplicable

Prior cases based on the August 2018 occurrences do not involve the same claims or causes of action set forth in the instant Complaint. Dates of occurrence are operative facts. Operative facts regarding Defendants' conduct in June 2019 cannot be the same as operative facts regarding Defendants' conduct in August 2018 because they took place in entirely different months and entirely different calendar years.

The Honorable Court in the Central District of Illinois stated, with regard to Muir's August 2018 claims: "Though the two encounters with TSA were similar and resulted in similar injuries, they were two separate encounters on separate days in different states and presumably involving different TSA agents; they therefore cannot be characterized as the same transaction or occurrence. *See Mayle v. Felix*, 545 U.S. 644, 659 (2005)." (*See* Case No. 1:20-cv-01280, Doc. 46, p. 15).

Therefore, it stands to reason that if Muir's August 9, 2018 and August 12, 2018 encounters could not be characterized as the same transaction or occurrence, then Muir's encounters with Defendants on June 6, 2019 and June 9, 2019 cannot be characterized as the same transaction or occurrence because they occurred in different calendar years than the transactions or occurrences in August 2018, and because the essential operative facts to Muir's FTCA claims against Defendant United States could not have been

8

alleged before September 8, 2020, *res judicata* does not apply to claims in the instant Complaint.

### a. Common Carrier Duties are Applicable

Defendant Allegiant's common carrier duties in the instant case are a duty to inquire and a duty to warn of an extralegal process, whereas prior litigation included only a duty to warn of a legal process and could not have included allegations related to a duty to inquire about an extralegal process or to warn of an extralegal process because the necessary facts regarding abnormally dangerous activity and the uninsured use of A.I. did not yet exist.

### b. Collateral Estoppel is Inapplicable

The issues at stake in the instant action are different from issues litigated in prior actions and have never been brought or litigated because it was not possible before May 18, 2021. Muir advances claims in the instant Complaint based on Defendant Allegiant's duty to inquire, and a conspiracy charge under 42 U.S.C. § 1983 is totally unrelated to in-concert liability under Restatement of Torts § 876 (*see* Seventh Circuit Court of Appeals Case No. 21-1312, Decision, p. 4) because Muir makes no claims regarding state actor conduct, only federal agents and private defendants. Therefore, because none of the issues central to the instant Complaint have been raised, contested, or submitted, collateral estoppel does not apply to Muir's claims against Defendant Allegiant in the instant Complaint.

## V. Muir's Claims Survive as a Matter of Law

### a. Claims 12 and 15 – In-Concert Liability

Muir cannot access the AIT passenger screening process without purchasing a ticket. And because the TSA Checkpoint scheme exists wholly inside Allegiant's contract of carriage, Allegiant is therefore inescapably intertwined with the TSA Checkpoint scheme as it would not otherwise exist without Allegiant's conduct. Also, Muir alleges, under in-concert liability, Allegiant's involvement in the TSA Checkpoint scheme, not any particular screening. And as Muir advances no 42 U.S.C. § 1983 claims, state actor conduct is not relevant.

### b. Claims 18 through 20 – BIPA

Under the theory of in-concert liability, the act of one party is the act of all parties. Therefore, under Restatement (2d) of Torts § 876, Allegiant is liable for the conduct of co-Defendants United States, TSA, and all others.

### c. Claim 23

Defendant Allegiant's Contract of Carriage requires Muir to encounter the modified AIT device, which is not, and cannot be, ADA compliant, which directly prevents Muir from his right to the benefit of air travel between the several states. With regard to Title II of the ADA, the correct standard for custodial control discrimination such as AIT passenger screening is deliberate indifference (see Complaint, p. 203). As Muir has demonstrated,

Defendants had ample time to reflect on their decision to replace human TSOs with artificial intelligence, and knew or should have known with substantial certainty that A.I. cannot recognize human disability, which made upholding 29 U.S.C. § 794 at the TSA Checkpoint totally impossible. Also, Muir's claims are not focused so much on discrimination as much as denial of use of the TSA Checkpoint through a substantial chilling effect under 29 U.S.C. § 794 and the Fourteenth Amendment, and the Fourth Amendment rational relationship test, because searching data representing human tissue beneath Muir's skin is not rationally related to searching data representing the surface of Muir's skin for items that could be threat objects.

    **d.    Claim 25**

Defendant Allegiant can and must be enjoined from including Contract of Carriage Paragraph 125 as written because is not accurate and Muir cannot rely on Defendant Allegiant's representation with regard to upholding U.S. law when booking his future tickets because he knows for a fact that his beneath the skin disability will be irrationally and impermissibly classified as a potential threat object on the surface of his skin through no fault of his own, and if he does not allow a physical pat down of his right groin hernia in order to clear the false ATR threat alarm, he will be arrested and fined and possibly imprisoned. This is wrong and against all measures of a civilized, technologically advanced society.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Michael Muir respectfully requests that this Court deny Defendant Allegiant Air LLC's Motion to Dismiss.


Dated: August 22, 2022                By:    MICHAEL MUIR, *PRO SE*

                                                                  _s/Michael Muir_____
Michael Muir
P.O. Box 1791
Sarasota, FL 34230
(712) 309-6121
muirone@yahoo.com