IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL MUIR,

     Plaintiff,

     v.

UNITED STATES, et al.,

     Defendants.

Case No. 8:22-cv-01110-MSS-CPT

## FEDERAL DEFENDANTS' MOTION TO DISMISS

### I.    Introduction

Plaintiff Michael Muir has sued a cast of many, to include the following federal defendants:  the United States; Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security ("DHS"); Jen Easterly, Director, DHS Cybersecurity and Infrastructure Security Agency; David Pekoske, Administrator, Transportation Security Administration ("TSA"); John Doe, Supervisor, TSA, Phoenix-Mesa Gateway Airport; John Doe Supervisor, TSA, Peoria International Airport; Jennifer Granholm, Secretary, U.S. Department of Energy ("DoE"), and two former TSA Administrators, John. S. Pistole and Peter V. Neffenger, in their individual capacities.[1]  Plaintiff seeks extraordinary declaratory, monetary, and injunctive relief.

---

[1] This motion is brought on behalf of the United States, DHS, TSA, DoE, TSA Administrator Pekoske, DHS Secretary Mayorkas, Cyber Security Director Jen Easterly, DoE Secretary Jennifer Granholm, and TSA John Doe Supervisors in their official capacities (collectively, the "Federal Defendants").  Former Administrators Pistole and Neffenger were sued in their individual capacity, pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).  Former Administrators Pistole and Neffenger will submit a separate motion to dismiss the claims brought against them.  Plaintiff also names L3Harris Technologies, Allegiant Air, Phoenix-Mesa Gateway Airport Authority, Metropolitan Airport Authority of Peoria, Leidos, Inc., and Battelle Memorial Institute, each of which are separately represented parties.

Against the Federal Defendants, Muir asserts violations of Arizona and Illinois laws, intentional and negligent tort claims under the Federal Tort Claims Act ("FTCA"), claims under the United States Constitution, as well claims brought pursuant to the Rehabilitation Act.  He further purports to raise a broad United States Constitutional challenge to a jurisdictional statute, Title 49 Section 46110.

Plaintiff's claims stem from two separate screening incidents he experienced when traveling through the Phoenix Mesa Airport ("IWA") in Phoenix, Arizona, and the Peoria International Airport ("PIA") in Peoria, Illinois, on June 6, 2019, and June 9, 2019, respectively. Plaintiff previously presented, litigated, and lost, similar claims regarding two nearly identical security screening encounters at IWA and PIA in August of 2018.  The Federal Defendants respectfully submit this motion to dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, as well as for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Pursuant to Local Rule 3.01(g), the motion should be considered opposed.

## II.    Prior Litigation

As Plaintiff acknowledges, this is the third federal lawsuit in which Plaintiff alleges injuries and damages sustained as a result of TSA passenger security screening.  Compl. at ¶¶ 33, 55 (referencing *Muir v. L3Harris Technologies, Inc.*, No. 2:19-cv-05887, (D. Az.), originally filed in the Superior Court of Arizona, Maricopa County, removed to federal court, and voluntarily dismissed; and, *Muir v. TSA*, No. 20-cv-1280 (C.D. Ill.), which was dismissed and subsequently affirmed by the Seventh Circuit (No. 21-1312)).  The crux of Plaintiff's prior lawsuits is that he was injured when patted down after TSA's airport screening machinery twice identified a bulging hernia as a potential security threat, in Phoenix and Peoria, on August 8 and

12, 2018, respectively.  *See Muir v. TSA*, No. 20-cv-1280 (C.D. Ill., Jan 22, 2021). With respect to the claims filed against the federal defendants in that case, the district court held that it lacked subject matter jurisdiction to review Plaintiff's constitutional and Rehabilitation Act claims against TSA insofar as they attacked TSA's Standard Operating Procedures ("SOP"), and such challenges could only be brought in the courts of appeals in accordance with 49 U.S.C. § 46110.

The district court in Illinois further determined that Plaintiff's *Bivens* action, brought against current TSA Administrator David Pekoske, was precluded by 49 U.S.C. § 46110 because it was inextricably intertwined with Plaintiff's challenge to TSA's SOP, and dismissed that count as moot.  Finally, the court considered and dismissed Plaintiff's claims brought pursuant to the FTCA because he had named an improper defendant, but the court also noted that the FTCA claims nonetheless would fail because "the Court can conceive of no possible scenario in which the United States officials had or breached the duty Plaintiff argues was owed to him."  *Muir v. TSA*, No. 20-cv-01280, at p. 31 (C.D. Ill. Jan 22, 2021).

Finding all of Plaintiff's claims against all of the named defendants meritless, the court dismissed Plaintiff's complaint entirely.  The Seventh Circuit agreed.  *Muir v. TSA*, No. 21-1312 (7th Cir. 2021) (unpublished).

### III.   Factual Allegations

Plaintiff avers that he is forty-one years old, and currently resides in Sarasota, Florida. Compl. ¶ 7.  He states that he is a married man, United States citizen, and an individual with a disability, which consists of a right-groin hernia.  *Id*.  The hernia, which is beneath his skin, constitutes his private protected health information representing his hidden disability and his private marital healthcare choices.  *Id*.  Plaintiff claims that he presented for screening at IWA on June 9, 2019, approximately two hours before his scheduled flight time.  Compl. ¶ 30.  He avers

3

that while at the airport, his hidden disability at his right groin was "intermittently symptomatic." Compl. ¶ 31.  He asserts that his disability symptom manifestation was at least ten percent worse than the screening of which he complained in 2018.  Compl. ¶ 33.

Despite having traveled by commercial airline in 2018 (the subject of his prior three federal lawsuits), Plaintiff avers that he was not properly warned about the security screening. Compl. ¶ 35.  And, though he claims that he did not consent to be screened by a millimeter wave-based scanner, after placing his items on the x-ray conveyor belt for screening, Plaintiff entered the TSA's Advanced Imaging Technology ("AIT") screening machine in the "hands-up" position.  Compl. ¶¶ 36, 38, 39.  Plaintiff asserts that the AIT machine created a digital full-body avatar of the Plaintiff, converting his private health information into chattel as a "biometric identifier" that can be used to identify him.  Compl. ¶ 41.  After proceeding through screening, Plaintiff was cleared to enter the sterile area of the IWA and flew to Peoria, Illinois.  Compl. ¶ 50.  He was not subject to a pat-down during the screening process.  *Id*.

Three days later, on June 9, 2019, Plaintiff again traveled by commercial airplane, this time, from PIA.  Compl. ¶ 52.  Again, he experienced his right groin hernia as uncontrollably "intermittently symptomatic."  Compl. ¶ 53.  As with his flight from Phoenix, Plaintiff proceeded to the PIA TSA screening checkpoint and was required to enter an AIT screening system.  Compl. ¶ 61.  Plaintiff again avers that he was not given fair notice or warning about TSA's screening process.  Compl. ¶ 57.  Plaintiff asserts that, again, the AIT ostensible converted his private digitized health information to chattel which could be used to positively identify him.  Compl. ¶ 63.  Again, Plaintiff was cleared through screening, was not patted down, and was allowed to enter the sterile area to board his flight.  Compl. ¶ 70. Plaintiff's theory as to

why TSA did not require a pat-down during his 2019 screenings is that his hernia stayed beneath his skin at the exact moment he was processed through AIT.  Compl. at ¶ 70.

This recitation makes clear that his claimed injuries arise solely from being processed through the AIT systems.  Plaintiff asserts that his encounters with the AIT systems used at IWA and PIA caused the final "crystallization" of his 2018 checkpoint experiences in which he received a pat-down due to his right groin anomaly.  Compl. ¶ 73.  The 2019 screenings caused the "shocking sudden arrival of post-traumatic stress with intense anxiety, paranoia, painful and disturbing involuntary physical movements, and physical manifestations including throat constriction, shortness of breath, right groin pain, right leg pain, disturbing synesthesia, and a feeling of irreversible physical invasion."  *Id.*

Plaintiff filed administrative tort TSA Claim Nos. 2021071271840 and 1021071271858 on June 5, 2021, based on his screening experiences at IWA and PIA airports in June of 2019.  Compl. ¶ 75.  TSA denied these claims on December 2, 2021.  *Id.*  But, Plaintiff also affirmatively states that he filed his first FTCA claim, regarding his 2018 screening experiences, with the TSA on September 5, 2019.  Compl. ¶ 657.[2]  Plainly, he knew all of his alleged injuries and factual basis for bringing any of his federal complaints even before he filed his first administrative claim with TSA regarding his 2018 screening experiences.

In summation, Plaintiff claims that the AIT screening he experienced in 2019 generated permanent digital records of his person that reveal his hidden disability – a hernia at his right

---

[2] In his prior litigation in the Central District of Illinois, Plaintiff stated that had exhausted his administrative remedies by filing claims with the TSA.  On September 5, 2019, he filed TSA Claim 2019091962941 regarding his August 12, 2018 screening experience at PIA (Peoria International Airport).  *Muir v. TSA*, No. 20-cv-01280, Dckt. No. 20, First Amended Complaint (FAC) at ¶ 63.  Then, on September 16, 2019, he filed TSA Claim 2019101363533 based on the August 9, 2018 screening experience at IWA (Phoenix-Mesa Airport).  *Id.* at ¶ 65.

groin.  He avers that that he was so deeply traumatized by the 2019 experiences, which harken back to his 2018 screenings that resulted in pat-downs, he is now haunted by a murderous entity.[3]  He affirmatively acknowledges that he was able to enter the sterile area of the two airports in question and travel by airplane to his destination.

## IV.   Legal Standards

### A.  Standard under Federal Rule of Civil Procedure 8

A shotgun pleading violates the requirement in Rule 8 of the Federal Rules of Civil Procedure that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief.  *Vibe Micro Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018); *see* Fed. R. Civ. P. 8(a)(2).  A shotgun pleading fails to some degree give the defendants adequate notice of the claims against them and the grounds on which each claim rests. *Vibe Micro*, 878 F.3d at 1295.  A district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds. *Id.* (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)).

### B.  Standard under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994).   Such jurisdiction must be proven by a preponderance of the

---

[3] And, the 2019 screening experiences triggered in the Plaintiff the appearance of a dark ghost known to himself as "The Shadow," which he describes as daily hauntings his waking psyche as a sinister and threatening presence in the lower right corner of his vision.  *Id.*  Plaintiff avers that he has the feeling that The Shadow, whom he as addressed out loud with the word "No," causes him physical pain and that it wants to paint the walls with Muir's blood.  *Id.*

evidence. *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010). Challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: facial and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam). Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion, meaning that the court must consider the allegations of the complaint to be true." *Fru Veg Marketing, Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1179 (S.D. Fla. 2012). If the Court determines that it lacks subject matter jurisdiction, it must dismiss the claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).

## C. Standard under Rule 12(b)(6)

A court may also dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted). The court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007). A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### D.  Standard with Respect to Pro Se Litigants

Pro se plaintiffs are constitutionally guaranteed access to the courts, *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983), and are otherwise entitled to have their pleadings construed liberally, *Sanders v. US.*, 113 F.3d 184, 187 (11th Cir. 1997), but they nevertheless must abide by the rules, *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a pro se litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

### V.    Argument

### A.  Plaintiff's Complaint Should be Dismissed in its Entirety for Violating F.R.C.P. 8.

At the outset, Plaintiff's shotgun Complaint should be dismissed because it clearly violates Federal Rule of Civil Procedure 8, which requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief.  *Vibe Micro Inc.*, 878 F.3d at 1294-95; *see* Fed. R. Civ. P. 8(a)(2).  Labels aside, complaints that violate some or all of these rules do not live up to the rules' pleading standards, and they make it difficult for the opposing party or parties to frame a response for the Court to control the proceedings and decide the legal issues.  *Weiland*, 792 F.3d at 1320, 1323.

There are four basic categories of shotgun pleadings.  *Weiland*, 792 F.3d at 1321.  First and most commonly, a pleading is shotgun if it contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Id.*  Second, a

pleading is shotgun if it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third, a pleading is shotgun if it does not separate each cause of action or claim for relief into a different count. *Id.* at 1323. Fourth and finally, a pleading is shotgun if it asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

Here, Plaintiff's Complaint, covering 250 pages and 707 numbered paragraphs is laden with conclusory, vague, and immaterial facts not obviously connected to his 25 separate counts, implicating the second and fourth variations of shotgun pleading. Many of his counts "reincorporate all the paragraphs from above." *See, e.g*., Compl. ¶¶ 284, 419, 407, 553, 563, 562, 639. He also declines to specify with particularity which of the defendants are responsible for which actions or omissions of which he complains. *See, e.g, Compl*. ¶ 666, asking the for injunctive relief against "Defendants;" Compl. Prayer for Relief, H & I, seeking mandamus and injunctive relief against "Defendants." Accordingly, Plaintiff' shotgun Complaint precludes any measure of case management, violates F.R.C.P. 8, and should be dismissed.

**B. Plaintiff's Claims Against the Federal Defendants are Barred by the Doctrines of Res Judicata and Collateral Estoppel.**

Importantly, Plaintiff could have, and should have, brought all of the claims he presents in this newest lawsuit when he filed in the Central District of Illinois. In fact, Plaintiff was aware of all of the averments and counts he brings in the instant complaint even before he initiated the administrative process with TSA to present his FTCA claims. See, Compl. ¶ 657; *Muir v. TSA*, No. 20-cv-01280, Dckt. No. 20, (FAC, filed on 9/8/2020) at ¶¶ 63, 65 (noting that he filed administrative claims with the TSA on September 5, 2019 and September 16, 2019, regarding his August 2018 screening experiences. Indeed, both of Plaintiff's 2019 FTCA administrative

complaints to the TSA were filed *after* the date he claims to have realized the full extent of his purported injuries and psychological damage resulting from the screening incidents he complains about now.  Likewise, Plaintiff was well aware of all of the issues he presents in <u>this</u> case before he filed in the Central District of Illinois.  Following a full and fair opportunity to litigate, res judicata protects a party's adversaries from the expense and problems attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions.  *Montana v. United States*, 440-U.S. 147, 153-54 (1979).  Additionally, collateral estoppel precludes re-litigation of issues that were actually litigated in the original action, even if the subsequent action involves a different cause of action.  *United States v. Beane*, 841 F.3d 1273, 1282-83 (11th Cir. 2016) (citing *Johnson v. United States*, 576 F.2d 606, 611 (5th Cir. 1979).

In the interests of preserving judicial resources and avoiding duplicative arguments, the Federal Defendants join, adopt, and incorporate Defendants Allegiant Air and L3Technologies in their Motion to Dismiss on the grounds of res judicata and collateral estoppel.  *See* L3 Motion to Dismiss, Dckt. No. 27, Arguments B and C; Allegiant Air Motion to Dismiss, Dckt. No. 28, Argument IV.  Plaintiff cannot use the instant Complaint as a do-over or de facto appeal in order to re-litigate the holdings that doomed his failed 2020 Central District of Illinois lawsuit, or his subsequent loss in the Seventh Circuit, and therefore this latest effort should be dismissed with prejudice.

**C.  Plaintiff cannot recover monetary damages for the constitutional claims he asserts.**

Plaintiff's convoluted Complaint scrambles purported tort claims and constitutional violations in a manner that makes it difficult to discern when and where he seeks monetary damages for constitutional violations, and from which defendants.  Nevertheless, to the extent he

seeks monetary compensation for alleged constitutional violations, however, as it is axiomatic that such claims cannot be brought against the United States, its agencies, or its officials sued in an official capacity.  *See FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994); *Kentucky v. Graham*, 473 U.S. 159, 1265 (1985) ("Official-capacity suits . . .'generally represent only another way of pleading an action against an entity of which an officer is an agent.'").

### D.  Plaintiff's Tort Claims Must be Dismissed for Lack of Jurisdiction and for Failure to State a Claim upon Which Relief may be Granted.

Absent a waiver, sovereign immunity "shields the Federal Government and its agencies from suit."  *Meyer*, 510 U.S. at 475.  The FTCA provides a congressional exception to the United States' sovereign immunity for tort claims, under which the government may "be sued by certain parties under certain circumstances for particular tortious acts committed by employees of the government." *Turner ex rel. Turner v. United States*, 514 F.3d 1194 (11th Cir. 2008) quoting *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994) (per curiam). Specifically, liability exists as against the United States alone for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment. . . ." 28 U.S.C. § 1346(b).   There are, however, several exceptions under the FTCA, which must be strictly construed in favor of the United States with all ambiguities resolved in favor of the Government.  *Patterson v. Wilder Constr. Co., Inc. v. United States*, 226 F.3d 1269, 1279 (11th Cir. 2000) citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992).  When the alleged conduct falls under one of the FTCA's statutory exceptions, the Court lacks subject matter jurisdiction.  *JBP Acquisitions, LP v. U.S. ex rel. FDIC*, 224 F.3d 1260, 1263 (11th Cir. 2000) citing *Dalehite v. United States*, 346 U.S. 15, 31 (1953), *Boda v. United States*, 698 F.2d 1174, 1176 (11th Cir. 1983).

Here, Plaintiff presents tort claims against Defendant United States for the following: conversion under Arizona and Illinois tort law (Claims 1 and 2, Compl. ¶¶ 283-302); trespass upon chattels under Arizona tort law (Claim 3, Compl. ¶¶ 303-312); intentional infliction of emotional distress under Arizona and Illinois tort law (Claims 4 and 8, Compl. ¶¶ 313-322; 353-360); intrusion upon seclusion under Arizona and Illinois tort law (Claims 5 and 6, Compl. ¶¶ 323-332; 333-343); public disclosure of private facts under Illinois law (Claim 7, Compl. ¶¶ 344-352); negligent infliction of emotional distress under Illinois law (Claim 9, Compl ¶¶ 361-385, with addenda "in-concert liability-Arizona" at ¶¶ 386-388[4]).  Additionally, Plaintiff presents tort claims against the Federal Defendants Illinois' Biometric Privacy Act ("BIPA") (Claims 18, 19, and 20, Compl. ¶¶ 528-551; 552-560; 561-567).  Plaintiff believes that the Federal Defendants are "strictly liable" under both Arizona and Illinois law for abnormally dangerous conduct. (Claims 21 and 22, Compl. ¶¶ 606-609; 610-616).

Plaintiff's tort claims are properly subject to dismissal under the discretionary function exception to the FTCA of 28 U.S.C. § 2680(a), which withholds liability when it is predicated on an alleged "exercise or performance or the failure to exercise or perform a discretionary function" conferred to an agency, *id*.  In his Complaint, Plaintiff preemptively posits that, because the Federal Defendants' conduct was abnormally dangerous and because he believes that TSA's AIT screening violates 49 U.S.C. 44901(*l*), the discretionary function exception to the FTCA cannot apply to his tort claims.  He is incorrect.  The Supreme Court has developed a two-step test to determine whether the government's conduct meets the discretionary function exception. *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).  The first step requires the

---

[4] While not a model of clarity, Plaintiff includes "in-concert liability" at Claims 10-15 against non-federal defendants, but also incorporates his FTCA claims therein.

Court to look to the nature of the challenged conduct and decide whether the conduct "violated a mandatory regulation or policy that allowed no judgment or choice." *Autery v. United States*, 992 F.2d 1523, 1526 (11th Cir. 1993). The discretionary function exception will not apply "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Gaubert* at 322. Second, if the court determines that no "statute, regulation or policy specifically prescribes a course of action," the court must then consider whether the challenged conduct "is of the kind that the discretionary function exception was designed to shield." *Id.* at 322-23. The purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 323.

By statute, the TSA Administrator is responsible for security screening operations intended to protect passenger air transportation. 49 U.S.C. § 44901. By invoking that Section, Plaintiff appears to presume that because 49 U.S.C. § 44901(*l*) sets forth certain limitations on TSA's use of AIT in the context of screening, then the manner in which TSA screens passengers is not discretionary. From this, Plaintiff reaches the wholly conclusory determination that AIT screening violates § 44901(*l*) because he believes – without evidence – that the screening captures and retains his personal health information. This interpretation misconstrues Section 44901, which addresses only certain "limitations on use of advanced imaging technology for screening passengers," and more particularly TSA's obligation to ensure that AIT is equipped with and employees automatic target recognition software, and otherwise "complies *with other such requirements at the Administrator determines necessary to address privacy consideration*s." 49 U.S.C. § 44901(*l*) (emphasis added). On its face, therefore, this statutory directive regarding AIT screening confers ample discretion to TSA with respect to the very

privacy protections and considerations hat are the central feature of Plaintiff's tort claims.  In effect, the questions when and how AIT screening functions, as a scientific or privacy matter (or "marital privacy" matter), are areas that are necessarily left to TSA discretion under Section 44901(*l*) and therefore involve an element of judgment or choice.    Where "a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, . . . the exercise of its authority is discretionary." *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 323 (5th Cir. 2009) (citing cases and legislative history); *cf. Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1164 (11th Cir. 2020) (applying § 2680(a) based on "numerous policy considerations [that] come into play regarding whether and to what extent a U.S. Forestry Branch employee or official might take a particular action during the monitoring or maintaining a controlled burn").

Indeed, by naming former Administrators Pistole and Neffenger as individual defendants for their roles in allowing AIT to be deployed and used by TSA, Plaintiff has implicitly acknowledged that the considerations regarding AIT deployment entails high-level decision-making that are necessarily "susceptible to policy analysis" or the sort that weigh[s] social, economic, and political policy considerations." *Foster Logging*, 973 F.3d at 1158 (internal quotations omitted).  Even without this implicit concession, D.C. Circuit considered and determined that TSA's initial decision to deploy AIT implicated novel "issues of privacy, safety, and efficacy" that necessitated notice and comment rulemaking. *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 6 (D.C. Cir. 2011).  Given these considerations, the wisdom of TSA's resolution of issues like privacy and intrusiveness and screening persons with hidden disabilities – which lie that the heart of Plaintiff's claims – are necessarily of the type intended to

14

be safeguarded from review through the prism of tort liability by the discretionary function exception in Section 2680(h).

Even if the Court were to find that the discretionary function exception does not apply to Plaintiff's tort claims, all of his tort claims should be dismissed either for lack of jurisdiction or for failure to state a claim upon which relief may be granted.  As discussed above, the Central District of Illinois considered and dismissed a negligent infliction of emotional distress claim brought by Plaintiff related to his screening by AIT, which cannot be re-litigated here (Claim 9). Additionally, Plaintiff points to no waiver of sovereign immunity for liability under the Illinois Biometric Privacy Act; as such Claims 18, 19, and 20 should be dismissed.[5]  Likewise, Plaintiff's claims for intentional infliction of emotional distress (4 and 8)must be dismissed under the intentional torts exception to the FTCA.  See 28 U.S.C. § 2680(h).[6]  Plaintiff's remaining tort claims for conversion, trespass upon chattels, intrusion upon seclusion, and public disclosure of private facts must also be dismissed for lack of jurisdiction, because they arise out of the same facts giving rise to the intentional infliction of emotional distress claim.  Because "there is no other government conduct upon which such claims can rest," *Metz v. United States*,

---

[5] Moreover, the Illinois Biometric Privacy Act defines "biometric identifier" as a retina or iris scan, fingerprint, voice print, or scan of the hand or face geometry, and it applies to private entities, specifically excluding state or local government agencies.  *See* 740 I.L.C.S. 14/10, Section 10, Definitions.

[6] Although Plaintiff's basis for the intentional infliction of emotional distress claim is not entirely clear, he has not alleged that he experienced an underlying assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).  To the extent that he asserts that TSA failed to warn him that its employees would subject him to screening, and that this is the basis of his intentional infliction of emotional distress claim, the Eleventh Circuit has held that a plaintiff cannot avoid the § 2680(h) exclusions by recasting a complaint in terms of negligent failure to prevent assault or battery.  *See Reed v. United States Postal Serv.*, 288 Fed. Appx. 638, *4 (11th Cir. 2008) (citing *Metz v. United States*, 788 F.2d 1528, 15233 (11th Cir. 1986).

788 F.2d 1528, 1535 (11th Cir. 1986), these intentional tort claims are barred as well. See *Metz* (intentional infliction of emotional distress and intrusion upon seclusion claims barred); *Misick v. United* States, No. 06-22714-CIV, 2007 WL 4557166 at *1-3 (S.D. Fla. Dec. 21, 2007) (public disclosure of private facts claim barred); *see also Cadman v. United States*, 541 Fed. Appx. 911, 913 (11th Cir. 2013) (invasion of privacy claim barred where underlying conduct was essential to an excepted claim).

### E. This Court lacks subject matter jurisdiction over Plaintiff's challenge to TSA's Standard Operating Procedures.

At bottom, Plaintiff objects to the procedures used by TSA and its personnel when he was screened at the TSA checkpoints in IAW and PIA. He believes that the AIT screening generally violated his rights to privacy, to be free from unreasonable search and seizure, and to due process. He further believes that the screening to which he was subject violates the Rehabilitation Act because he is a qualified individual with a disability. He believes that TSA's routine checkpoint screening procedures, which were repeated in an almost identical manner just days apart at two separate airports, each unfolding in an unremarkable manner at the time, nevertheless violated his constitutional rights.

To grant the Plaintiff the relief he requests, the Court would need to assess the propriety of TSA's checkpoint screening procedures, which are set forth in its Standard Operating Procedures ("SOP"). Yet, pursuant to 49 U.S.C. § 46110, the Courts of Appeals have exclusive jurisdiction over challenges to TSA's SOP. Specifically, 49 U.S.C. § 46110(a) provides that:

> person disclosing a substantial interest in an order issued by . . . the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration . . . in whole or in part under [Sections 40101 through 47534], or subsection (l) or (s) of section 114 may apply for review of that order by filing a petition for review in the United States Courts of Appeals for the

District of Columbia Circuit or in the courts of appeals of the United States for the circuit in which the person resides . . .

49 U.S.C. § 46110(a). The statute confers on the Courts of Appeals "exclusive jurisdiction to affirm, amend, modify or set aside any part of [such an] order." 49 U.S.C. § 46110(c) (emphasis supplied).

Section 46110 is a jurisdiction-channeling provision with a long history confirming that it applies to a wide range of agency action.  Courts interpreting Section 46110 (and its statutory antecedent, 49 U.S.C. § 1486) have emphasized that the term "order" in this provision should be read "expansively."  *See Aviators for Safe & Fairer Regulation v. FAA*, 221 F.3d 222, 225 (1st Cir. 2000).  To be reviewable, the agency action "must possess the quintessential feature of agency decisionmaking" – finality – by virtue of the fact that it reflects the "consummation" of the agency's decisionmaking process, and determines "rights or obligations" or give rise to "legal consequences" for others.  *Village of Bensenville v. FAA*, 457 F.3d 52, 68 (D.C. Cir. 2006).  Thus, even a letter or regulation qualifies as an "order" reviewable solely under Section 46110. *City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1188 (D.C. Cir. 2007); *Nat'l Fed'n of Blind v. U.S. Dep't of Transp.*, 78 F. Supp. 3d 407, 413 (D.D.C. 2015).

As such, the SOP at issue here falls within the scope of Section 46110.  Section 46110 applies to orders issued in whole or in part under Title 49, Subtitle VII, Part A, regarding "security screening duties and powers designated to be carried out" by the TSA Administrator, including those authorities directing TSA to provide for the screening of all passengers and property prior to boarding an aircraft. *See* 49 U.S.C. §§ 44901-03, 44925.  TSA regulations likewise require that passengers comply with screening procedures before entering the "sterile area" of an airport or boarding an aircraft. 49 C.F.R. § 1540.107(a); *see also* 49 U.S.C. §§ 44901-03.  The TSA Administrator accordingly issued a Screening Checkpoint SOP to

implement these statutory and regulatory mandates regarding TSA screening procedures. The Screening Checkpoint SOP constitutes an "order" within the scope of 49 U.S.C. § 46110. *See* 49 U.S.C. § 46110(a); *Blitz v. Napolitano*, 700 F.3d 733, 740 (4th Cir. 2012) (affirming district court's ruling that a TSA "Checkpoint Screening" procedure was an order under § 46110 and collecting authority); *Gilmore v. Gonzales*, 435 F.3d 1125, 1135 (9th Cir. 2006). In *Corbett v. United States*, the Eleventh Circuit found that the district court did not err in dismissing the plaintiff's complaint for lack of jurisdiction under Section 46110 because the plaintiff challenged the TSA's Screening Checkpoint SOP. 458 F. App'x 866, 870 (11th Cir. 2012).  S*ee also Roberts v. Napolitano*, 463 F. App'x 4 (D.C. Cir. 2012); *Ventura v. Napolitano*, 828 F. Supp. 2d 1039, 1042 (D. Minn. 2011).

Further, a court of appeals maintains exclusive jurisdiction even where the claims asserted by the plaintiff "are inescapably intertwined with an evaluation" of a TSA order. *Griggs v. LaHood*, 770 F. Supp. 2d 548, 554 (E.D.N.Y. 2011) (Spatt, J.); *see also Merritt v. Shuttle, Inc.*, 187 F.3d 263, 270, 272 (2d Cir. 1999) (directing district court to dismiss plaintiff's Fifth Amendment challenge to an investigation that led to plaintiff's revocation of his pilot certificate by way of an emergency order for lack of subject matter jurisdiction pursuant to 49 U.S.C. § 46110).  Plaintiff presents a Rehabilitation Act claim in conjunction with his constitutional claims against the Federal Defendants.  Compl., Claim 24. The Rehabilitation Act of 1973 provides that no otherwise qualified individual with a disability "shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" receiving federal funds. 29 U.S.C. § 794, Section 504(a).  This claim cannot stand separately from the constitutional claims that Plaintiff presents,

and Plaintiff cannot circumvent the jurisdictional provision of 49 U.S.C. § 46110 by presenting it here, or more verbosely than he did in the Central District of Illinois.

Courts consistently hold that challenges implicating TSA's screening requirements, even under the Rehabilitation Act, are appropriately heard in the court of appeals in the first instance. *See, e.g., Ruskai v. Pistole*, No. 775 F.3d 61 (1st Cir. 2014) (reviewing passenger's Rehabilitation Act claim in conjunction with constitutional challenges).[7] Even if, *arguendo*, these allegations do not constitute direct attacks on the relevant TSA Orders themselves, they are clearly inescapably intertwined with a review of those Orders. Because exclusive jurisdiction over challenges to the Screening Checkpoint SOP lies with the court of appeals, this Court lacks subject matter jurisdiction over Plaintiff's constitutional and Rehabilitation Act claims. *See* 49 U.S.C. § 46110.

Plaintiff asserts that his Complaint does not challenge the TSA SOP because he merely seeks redress under the FTCA, common law torts, and Illinois state law. *See,* Compl. ¶ 703. And yet, all of his averments stem from routine TSA screening, as developed and implemented by the TSA administrator, and the application of AIT to discern whether he had any prohibited items on his person.[8]   Ultimately, however, Plaintiff cannot divorce his myriad theories from

---

[7] *See also, Corbett v. United States,* 458 F. App'x 866, 870 (11th Cir. 2012) (passenger challenging TSA screening procedures could not escape Section 46110 by asserting a broad constitutional challenge); *Nelson v. DHS*, No. 06–0050, 2007 WL 1655344, at *2 (W.D. Va. June 7, 2007) (no district court jurisdiction to hear constitutional challenge to TSA order requiring fingerprinting); *Thomson v. Stone*, No. 05–CV–70825-DT, 2006 WL 770449, at *6 (E.D. Mich. Mar. 27, 2006) (Fourth Amendment claim inescapably intertwined with TSA airport screening procedures).

[8] In effect, Plaintiff appears to be attempting to avail himself of a narrow limitation in Section 46110 jurisprudence that would permit a FTCA claim that is not dependent on an order otherwise covered by Section 46110. *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 190 (2d Cir. 2001) (allowing pilot whose certificate was suspended after a weather-related incident on take-off to bring FTCA claim addressing the FAA's failure to warn him about adverse weather prior to take-

the SOP that set forth the very procedures and requirements that he claims injured him; his effort

to attack the decision to deploy AIT or add ATR to it necessarily hinge on the inclusion of AIT

(or AIT-with-ATR) as part the SOP that used to manage airport security screening.  Such

ostensibly "collateral" claims are therefore squarely foreclosed by Section 46110, as they either

directly attack the SOP or are inescapably intertwined with them.

### F.  Plaintiff's Constitutional Challenges to 49 U.S.C. § 46110 Must Be Dismissed.

In an attempt to circumvent the jurisdictional provisions of 49 U.S.C. 46110, Plaintiff

asserts a broad challenge to the constitutionality of § 46110 itself.  As he acknowledges that his

challenge to § 46110 is untimely because he realized the full extent of his injuries on August 10,

2019,[9] the 62nd day after the latest June 2019 screening of which he complains, Plaintiff yet

endeavors to create a colorable claim that § 46110 is unconstitutional.  First and foremost,

nothing precluded Plaintiff from bringing a timely challenge to TSA's screening procedures as

violating his rights under the First Amendment or his due process rights either immediately after

the August 2018 pat-down screenings or the June 2019 uneventful AIT screenings.  To wit,

Plaintiff sets forth considerable detail about the agony, consternation, and fear he experienced in

June of 2019, *at the time of screening*.  See, Compl. ¶¶ 47, 50, 55.  Further, the jurisdictional

provisions of § 46110 do not, in any way whatsoever, preclude Plaintiff from exercising his First

Amendment rights to complain about TSA's screening protocols, in a timely manner.

Significantly, the Fourth Circuit considered and rejected a due process challenge to

§ 46110 in *Blitz v. Napitano*, 700 F.3d 733 (4th Cir. 2012).  In *Blitz*, the plaintiffs – two

---

off, as that issue was outside the scope of the suspension decision by FAA that *was* covered by
Section 46110).
[9] Plaintiff knows the precise date he became because the appearance of the Shadow that haunts
him appeared on August 10, 2019, the date on which Jeffrey Epstein committed suicide.  Compl.
¶ 698.

passengers traveling with their minor child – challenged TSA's use of AIT and pat-downs at airport security checkpoints around the United States. *Blitz,* 700 F.3d at 735. After their claims were dismissed in federal district court for want of subject matter jurisdiction in accordance with § 46110, plaintiffs appealed, arguing that jurisdictional provision violated their rights to due process. Just as the plaintiffs in *Blitz* presented no judicial authority for the proposition that § 46110 – or any similar jurisdictional provision channeling review to a particular court – contravenes the Constitution, the Plaintiff in this case presents no viable argument in support of his assertion that the statute violates the Constitution.[10]   Accordingly, Plaintiff's constructional challenges to § 46110, found at Compl. Section VI, p. 231, should be dismissed.

### G. Plaintiff lacks standing for the injunctive relief he seeks.

In order to obtain equitable relief, Plaintiff must plausibly allege a constitutional wrong against the Federal Defendants. *See, e.g., Milliken v. Bradley*, 418 U.S. 717, 745 (1974) (equitable relief is inappropriate if there was "no constitutional wrong calling for an [equitable] remedy"). Because Plaintiff fails to plausibly allege a constitutional right to privacy during AIT screening, or a Fourth Amendment or Fifth Amendment due process claim against the Federal Defendants, he cannot obtain injunctive or declaratory relief.

Plaintiff asserts that his AIT screening constituted an unreasonable violation of his right to privacy under *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965) and his rights to be free from search and seizure in violation of the Fourth Amendment. Compl. ¶ 644. Searches and

---

[10] There is nothing unique in Congress' adoption of § 46110, thus vesting judicial review of TSA Orders in an appropriate court of appeals. Indeed, agency decisions are commonly subject to such jurisdiction-channeling provisions, and final agency actions are generally reviewed in the courts of appeals. *See, e.g.*, 28 U.S.C. § 2342 (vesting exclusive jurisdiction in courts of appeals to review orders of various federal agencies); *see also* 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3940 (2d ed. 1996) (explaining history of appellate review of administrative agencies). *Blitz*, 700 F.3d at 742.

seizures are "ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000).  However, "where the risk to public safety is substantial and real," the Supreme Court has sanctioned several general search regimes that are free from the usual warrant-and-probable cause requirements, including searches "at airports and entrances to court and other official buildings." *Chandler v. Miller*, 520 U.S. 305, 323 (1997).  Importantly, searches at airport security checkpoints do not depend on consent of the individual to be searched, but are permissible instead on special needs doctrine.  *United States v. Aukai*, 497 F.3d 955, 959 (9th Cir. 2007) (en banc); *United States v. Hartwell*, 436 F.3d 174, 178, 180 n.11 (3d Cir. 2006) (Alito, J.) (analyzing TSA search under administrative search doctrine and finding more recent decisions foregoing consent-based justification for such searches).

A search of passengers at an airport is, as a matter of law, consistent with a "reasonable administrative search" under the Fourth Amendment.  *Corbett v. Transp. Sec. Admin.* 767 F.3d 1171, 1182 (11th Cir. 2014).  Indeed, "[a]irport screening is a permissible administrative search; security officers search all passengers . . . and passengers elect to travel by air knowing that they must undergo a search." *Corbett*, 767 F.3d at 1182. While some passengers find the pat-down procedure subjectively objectionable, it is nevertheless a permissible part of airport screening. *See, e.g., Ruskai v. Pistole*, 775 F.3d 61, 64-65 (1st Cir. 2014) (noting petitioner was "not unusual" in portraying pat-down as subjectively invasive and disturbing, but rejecting her Fourth Amendment and Rehabilitation Act challenges nevertheless on the basis that TSA's screening procedures were objectively reasonable and did not deny her access to a federal program).

Plaintiff's allegations describe nothing more than a routine pre-boarding screening. Courts recognize that the airport security screening procedures described here are "well-tailored

to protect personal privacy," as they "escalat[ed] in invasiveness only after a lower level of screening disclosed a reason to conduct a more probing search." *Hartwell*, 436 F.3d at 180. Moreover, the intrusiveness is further lessened precisely because "air passengers are on notice that they will be searched." *Id.* Thus, the facts that Plaintiff alleges – that he was screened in 2019 at the same locations and in much the same manner as he had been in 2018 (albeit without being patted-down in 2019) – describe a search that is reasonably necessary to determine the existence or absence of explosives, a congressionally mandated duty of TSA and that courts view the traveling public to be aware of before arriving at the airport. Given these precepts, the complaint offers no allegations that support a plausible claim that the screening violated the Fourth Amendment apart from plaintiff's own subjective objection to its intrusiveness. *See, e.g., Miles v. Napolitano*, 2012 WL 12878319, at *2-3 (C.D. Cal. Mar. 15, 2012) (no Fourth Amendment violation where plaintiff alleged that "her buttocks were squeezed and touched in the course" of the pat-down and her hands were swabbed after the pat-down); *see also VanBrocklen v. United States*, 2010 WL 1372321, at *2-4 (N.D.N.Y. Apr. 7, 2010) (no Fourth Amendment violation where plaintiff alleged that TSA screener conducted a pat-down that caused plaintiff to scream in pain based on unusual neurological condition). Thus, Plaintiff's allegations that the Federal Defendants violated the Fourth Amendment do not suffice to set forth a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff also appears to invoke Due Process violations under the Fifth Amendment, claiming that the Federal Defendants have precluded him from his "right to travel between the several states by air." Compl. ¶ 644. The Fifth Amendment provides that a person shall not "be deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. It is undisputed that "the right to travel is a part of the 'liberty' of which the citizen cannot be

deprived without the due process of law under the Fifth Amendment." *See Kent v. Dulles*, 357 U.S. 116, 125 (1958); *see also Saenz v. Roe*, 526 U.S. 489, 498 (1999) (noting that the right to travel is "firmly embedded" within the jurisprudence of the Supreme Court).  Plaintiff asserts a liberty interest in domestic travel. Plaintiff fails, however, to allege facts that plausibly suggest that his has been denied the right to travel.  Nothing in Complaint even hints that he was denied boarding or otherwise inhibited from making his flights.  As the Sixth Circuit noted, a fundamental right protected by the Fifth Amendment is only implicated by government action that "significantly interferes" with that right, and that the extra hurdles that come from such additional screening measures "do not amount to a constitutional violation" as the plaintiffs "have not actually been prevented from flying altogether or from traveling by means other than an airplane." *Beydoun v. Sessions*, 871 F.3d 459, 467-68 (6th Cir. 2017 (rejecting due process challenge to ostensible placement on the Selectee List, which entails enhanced screening procedures before being allowed to access the sterile area of an airport).  Accordingly, his Fifth Amendment due process claims should be dismissed.

Alternatively, if the court determines that Plaintiff does state a plausible constitutional claim on the merits, that is not barred by Section 46110, his request for injunctive or declaratory relief still fails because he does not allege a real and immediate threat of future injury.  To have standing to seek injunctive or declaratory relief, a plaintiff must demonstrate a real and immediate injury or threat of injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (to satisfy threshold requirement of alleging actual case or controversy, plaintiff must demonstrate personal stake in outcome, and the injury or threat of injury is required to be both real and immediate).  Past exposure to illegal conduct does not, in and of itself, show a present case or controversy regarding injunctive relief if it is unaccompanied by any continuing, present adverse

effects. *Lyons*, 461 U.S. at 102. Despite Plaintiff's assertion that "future injury at the Checkpoint is guaranteed by the laws of logic and physics" (Compl. ¶ 665), his complaint is devoid of any allegation that he intends to travel again.  Plaintiff offers, at best, an allegation of a "possible future injury"—not a "threatened injury" that is "certainly impending"—and, thus, he "do[es] not satisfy the requirements of Art. III."  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).[11]   Thus, Plaintiff's request for injunctive and declaratory relief should be dismissed.

## CONCLUSION

For the above reasons, Plaintiff's claims against the Federal Defendants should be dismissed in their entirety.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:   */s/ Lacy R. Harwell, Jr.*
LACY R. HARWELL, JR.
Assistant United States Attorney
Florida Bar No. 714623
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: 813-274-6000
Facsimile: 813-274-6200
E-mail: randy.harwell@usdoj.gov

---

[11] Even if there is some possibility of future travel by Plaintiff, this is not enough to support a finding of the "actual or imminent injury" that the law requires.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that [the Supreme Court's] cases require.").

25

<u>Certificate of Service</u>

I certify that on October 7, 2022, I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve all registered users in this case.

I further hereby certify that on October 7, 2022, I caused a true copy of the foregoing to be served by United States mail, first class postage prepaid, upon:

Michael Muir
P.O. Box 1791
Sarasota, FL  34230

/s/ *Lacy R. Harwell, Jr.*
Lacy R. Harwell, Jr.
Assistant United States Attorney

26