IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MICHAEL MUIR, ) | |
| ) | 8:22-cv-01110 |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES; et al. ) | |
| ) | |
| *Defendants*. ) | |

**PLAINTIFF'S RESPONSE TO FEDERAL DEFENDANTS' MOTION TO STAY AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Michael Muir ("Muir") hereby opposes Federal Defendants' Motion to Stay [ECF 41] and in support submits this incorporated memorandum of law.

## MEMORANDUM OF LAW

Federal Defendants' motion to stay the proceedings should be denied because: (1) Harm to Muir outweighs the remote possibility of total dismissal of the case, (2) Defendants' pending motions to dismiss are neither clearly meritorious nor truly case dispositive and Defendants have not shown good cause or reasonableness for a full stay, and (3) Defendants' threshold and foundational defenses are defeated. Therefore, Muir requests that the Court consider ordering a reasonable extension of time to file the Case Management Report and begin discovery while it resolves the pending motions to dismiss.

# INTRODUCTION

The sole aspect of the instant case doomed to failure is Defendants' unconscionable artificial intelligence experiment at the TSA Checkpoint and Muir agrees that this Court should take a "preliminary peek" at the pending motions to dismiss the case as it will immediately see that, even if all of the motions to dismiss are granted in full, which is highly unlikely, there is no possibility for complete case disposition as Defendants' have acknowledged that "nothing precluded Plaintiff from bringing a timely challenge to TSA's screening procedures as violating his rights" (*See* ECF 38, p. 20).

Muir will be wrongfully denied access to the commercial airport sterile area due solely to his qualified disability in late December 2022, thereby suffering harm, which will trigger the start of his sixty day window to file a petition for review of a final TSA order pursuant to 49 U.S.C. § 46110. Therefore, a stay in the proceedings would wrongfully prevent Muir from timely filing his Petition for Review of a Final TSA Order and mandatory accompanying Notice of Related Cases update pursuant to Local Rule 1.07(c), which would irreparably harm Muir and his long-term legal interests.

"If the government does it, it must be legal…" Yes? No, because, as Sturgeon's Law informs us, "nothing is always absolutely so". Therefore, we, the citizens and temporary stewards of this "shining city on the hill", are called to question previous assumptions when there is just cause to do so.

Disposition of the pending motions to dismiss the instant case requires that the common belief in government's infallibility be challenged because, even though no "QATT" has "touched" more lives post-9/11 than the AIT device at issue here, the precise technical details of the TSA AIT passenger screening program have gone unexamined by Courts since after *EPIC* and the significant rules change and corresponding equipment modification that, against the will of Congress, totally eliminated the individual "visual image" on March 3, 2016, which is the official date TSA strayed from its traditional area of expertise and, aided by advanced technology (while simultaneously blinded by mission drift), crossed-over into *de facto* health administration.

Muir's congenital physical disability is not an anomaly, but instead a statistically predictable consequence of being a natural human male whose testicles descended, and Muir's unpredictable and uncontrollable symptoms are not and cannot ever be a threat because his natural human tissue is not and cannot ever be a threat object, which makes the algorithmic search of data representing his human tissue beneath his skin irrational and unlawful.

It is an unfortunate but undeniable historical fact that factions within the government can and do pursue their own hidden agendas outside the law and control of Congress and the American people. The TSA is not infallible and because the unauthorized use of unmonitored artificial intelligence in place of a human TSO in the TSA AIT passenger screening scheme is an

agency action that addresses a matter of "great political significance" (world governments are just now beginning to formulate A.I. policies and standards) and requires an "earnest and profound debate" (irreconcilable statements regarding the precise configuration of the millimeter wave security portal in use at TSA Checkpoints must be addressed, as well as issues surrounding insurance requirements under the SAFETY Act and the Open Architecture Agreement for international data sharing that TSA has endorsed), Muir submits that, under Local Rule 3.01(i), the instant case should be considered under the Major Questions Doctrine. See *West Virginia v. EPA* (2022).

    In a nutshell, this case is Muir vs. the abnormally dangerous use of artificial intelligence during TSA AIT passenger screening at commercial airports in the United States and Defendants have not only not demonstrated good cause for a stay, but, at this juncture, have instead made their prior bad faith conduct necessary to address. Therefore, we, the citizens of the United States, must ask: why would the Defendants choose to mislead Muir instead of simply and straightforwardly addressing the AIT configuration issues when presented with the opportunity in Arizona court over two years ago? Only discovery can precisely answer this and other pressing questions and Muir therefore opposes a stay in the case because Defendants have failed to demonstrate any valid reason that compliance with the October 17, 2022 Case Management Report deadline set forth in ECF 2 should be fully stayed.

## ARGUMENT

**I.   Harm to Muir Outweighs the Remote Possibility of Dismissal**

A full stay of the proceedings should be denied because a full stay would harm Muir unjustly by preventing him from; (1) moving the Court for time-sensitive and emergency injunctive relief prior to his upcoming travel between the several states via commercial airplane in late December 2022, and (2) exercising his First Amendment right to petition his government for redress through the timely filing of a Petition for Review of a Final TSA Order in the D.C. Court of Appeals pursuant to 49 U.S.C. § 46110.

(1) Time-Sensitive and Emergency Injunctive Relief: Muir must not be prevented from having the ability to move the Court for an emergency temporary injunction prior to air travel which: (A) Requires Defendants to visually resolve all ATR threat alarms at Muir's right groin, (B) Prevents Defendants from physically touching Muir at his right groin if the artificial intelligence produces a false ATR threat alarm at his right groin due to his disability, and (C) Prevents all persons involved with passenger screening at the TSA Checkpoints, including local and state authorities, from ever restraining Muir in a way that even temporarily prevents him from reducing his right groin hernia using his left hand, as his inability to reduce his right groin hernia will result in unnecessary pain and suffering, and could result in irreversible long term physical damage or sudden death.

(2) Petition for Review of a Final TSA Order: Muir has the First Amendment right to file his petition for review of the TSA SOP pursuant to 49 U.S.C. § 46110 and a stay of the proceedings wrongfully prevents Muir from advancing his case according to well-established procedure.

## II.   Defendants' Pending Motions to Dismiss are neither Clearly Meritorious nor Truly Case Dispositive

Defendants' motions to dismiss lack clear merit due to the bad faith conduct of previously citing irrelevant law (Case 2:19-cv-05887-DGC, Doc. 14, p. 13, citing *EPIC* and AIT "image") and producing irrelevant documents (all Safety Act Certifications submitted describe AIT devices no longer in use).

Defendants' motions cannot be fully case dispositive because Muir has the right to petition his government pursuant to 49 U.S.C. § 46110 and the outcome of that review will affect the ruling on the merits of the instant case.

## III.   Defendants' Threshold and Foundational Defenses are Defeated

The Court should deny the Federal Defendants' motion to stay because: (1) Res Judicata does not apply in this case, (2) the 28 U.S.C. § 2680(a) discretionary function exception is not applicable with regard to matters of scientific objectivity and is therefore unavailable to Defendants at the SOP level, and (3) qualified immunity is not applicable with regard to deliberate indifference in the context of 29 U.S.C. § 794 and the Fourteenth Amendment to the United States Constitution and is therefore also unavailable here.

**Res Judicata**: In its "Motion for Leave to File Reply" [ECF 33], Defendant Allegiant stated: "Plaintiff argues that he can establish the five elements of a fraud claim based on Paragraph 125 of the Contract of Carriage that applied to the tickets he purchased in advance of his August 2018 travel between IAW [sic] and PIA. That provision is not fraudulent; and <u>more importantly, it was not contained in the applicable Contract of Carriage that Plaintiff agreed to when he purchased his tickets for the June 2019 travel at issue in the current proceedings</u>." (Emphasis added).

Removal of Paragraph 125 from Defendant Allegiant's Contract of Carriage renders all parties' *res judicata* arguments in the instant case null because it is now undisputed that the Contract of Carriage applicable to Muir's August 2018 travel is not the same as the Contract of Carriage applicable to Muir's June 2019 travel. Therefore, the operative contracts are objectively different, which means that claim preclusion does not apply here.

**Other Legal Implications:** Defendant Allegiant's decision to remove Paragraph 125 from the Contract of Carriage was a deliberate act. Therefore, we must ask; on what information was this act based? Put another way, what did Defendants know about the impermissible construction of the 49 C.F.R. Part 1540 AIT passenger screening process and when did they know it?

On some date between May 9, 2017 and April 15, 2019, Defendant Allegiant's Contract of Carriage was changed to remove Paragraph 125, the

7

provision guaranteeing Muir's rights would be upheld. Removal of a provision that states "[a]ll transportation is sold and all carriage is performed subject to compliance with all applicable laws… many of which are not specified herein but are nonetheless binding on Carrier and all passengers" could be construed as an implicit admission that, under the terms of the new Contract, carriage <u>will not</u> be performed subject to compliance with all applicable laws. This makes perfect sense because it is technically impossible to uphold 29 U.S.C. § 794 and the Fourteenth Amendment under the current administration of 49 C.F.R. Part 1540 at the TSA Checkpoint.

**28 U.S.C. § 2680(a) - Discretionary Function Exception:** Muir will fully address this and other complex FTCA issues in his forthcoming response to Federal Defendants' motion to dismiss [ECF 38], but for purposes of the instant motion to stay [ECF 41], we must look at the nature of the actions of the Federal Defendants conducting the TSA AIT screening program under 49 C.F.R. Part 1540, not the decision to undertake the program. Once Federal Defendants undertook the AIT passenger screening program, they were required to do so in accordance with their established policies. See *Kim v. US*, 940 F. 3d 484, 488 (9th Cir. 2019).

Rehabilitation Act Section 504, codified as 29 U.S.C. § 794, is the established policy for all federal programs and is therefore binding on the TSA AIT passenger screening program. "[D]ecisions involving the application

of objective scientific standards ... are not insulated by the discretionary function exception because they do not involve the weighing of economic, political and social policy." *Kennewick,* 880 F.2d at 1030 (internal quotation omitted)." *In re Glacier Bay*, 71 F. 3d 1447, 1453 (9th Cir. 1995).

Certainly, the AIT passenger screening system requires the careful — perhaps even difficult—application of specialized knowledge. But even if the AIT scheme requires officials to make difficult choices, it does not afford them an opportunity to view the inviolable laws of physics and computer science based on their social, economic, or political views as the government cannot identify even a single policy-based consideration that might influence the laws of logic, the laws of propositional calculus, or the laws of computer science.

Defendant United States is not entitled to the 28 U.S.C. § 2680(a) discretionary function exception with regards to IWA TSA Supervisor John Doe's conduct at IWA on June 6, 2019 or PIA TSA Supervisor John Doe's conduct at PIA on June 9, 2019 because the execution of the AIT passenger screening program under 49 C.F.R. Part 1540 by TSA Supervisors is not discretionary and involves no room for choice or judgment.

Defendant United States is not entitled to the 28 U.S.C. § 2680(a) discretionary function exception with regards to Defendant TSA Administrators' challenged conduct because Muir's claim involves a challenge

not to the design of the AIT program as defined by Congress in 49 U.S.C. § 44901, but the application of objective scientific standards with regards to sound computer science knowledge and practices and the unconstitutional ultrahazardous, and negligent <u>implementation</u> of the AIT passenger screening program under 49 C.F.R. Part 1540.

The United States Supreme Court has prescribed a two-part test for determining the applicability of the discretionary function exception. Courts are to ask first whether the challenged action was a discretionary one — i.e., whether it was governed by a mandatory statute, policy, or regulation. If the action is not discretionary, it cannot be shielded under the discretionary function exception. Second, courts ask whether the challenged action is of the type Congress meant to protect — i.e., whether the action involves a decision susceptible to social, economic, or political policy analysis. See *O'Toole v. United States,* 295 F.3d 1029, 1033-34 (9th Cir. 2002; summarizing *Gaubert/Berkovitz* test). It is the government's burden to demonstrate the applicability of the discretionary function exception. *Bear Medicine v. United States ex rel. Sec'y of the Dep't of the Interior,* 241 F.3d 1208, 1213 (9th Cir.2001)" *Whisnant v. US*, 400 F. 3d 1177, 1180-1181 (9th Cir. 2005).

It is undisputed that the TSA AIT passenger screening scheme is governed by 49 U.S.C. § 44901 (*See* ECF 38, p. 13), therefore, the "analysis begins with the statute's <u>language</u>." See *Barnhart v. Sigmon Coal Co.,* 534

10

U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). Where Congress's intent is clear from that language, it must be given effect—neither the agency nor this court may deviate from it. See *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). (Emphasis added). Where the statute is ambiguous, however, we owe some deference to the interpretation advanced by the agency assigned to administer the statute. *White v. Scibana,* 390 F.3d 997, 1000 (7th Cir.2004)." *Arobelidze v. Holder*, 653 F. 3d 513, 518 (7th Cir. 2011).

Federal Defendants' actions in this case were not discretionary, and the execution of 49 C.F.R. Part 1540 at commercial airports cannot be shielded by the discretionary function exception because 49 U.S.C. § 44901 governs the use of AIT for passenger screening and prescribed, in precise, unambiguous detail, the specific technical manner in which AIT passenger screening was to occur, including specific limitations on the use of advanced imaging technology. Federal Defendants and TSA Administrators Pekoske, Pistole and Neffenger failed to follow the specific directives contained in 49 U.S.C. § 44901 regarding the use of AIT. In this case, there was no room for choice or judgment because the language of the statute specifies the production of a "visual image". Changing the AIT from the congressionally approved and mandated production of a "visual image" to the unauthorized creation of "proprietary code" that totally removed the visual image was not an option.

11

If "Congress has directly spoken to the precise question at issue,"… we "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)" *UESCO INDUSTRIES v. POOLMAN OF WISCONSIN,* 993 NE 2d 97, 112 - Ill: Appellate Court, 1st Dist., 1st Div. 2013. "An administrative agency delegated rulemaking authority has no power to make law, but instead is limited to creating rules to effectuate the will of the legislature as expressed in the relevant statute. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 213-14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668, 688 (1976); *Dixon,* 75 Ill.2d at 60, 25 Ill.Dec. 664, 387 N.E.2d 320 ("a statute may not be altered or added to by the exercise of a power to make rules thereunder"); *Peerless Wholesale Liquors, Inc. v. Illinois Liquor Control Comm'n,* 296 Ill.App.3d 230, 235, 230 Ill.Dec. 651, 694 N.E.2d 620 (1998) ("Administrative rules cannot be read to limit or extend the scope of a statute")." *Arellano v. Department of Human Services*, 943 NE 2d 631, 639 - Ill: Appellate Court, 2nd Dist. 2010. The Federal Defendants and TSA Administrators' answer is not based on a permissible construction of 49 U.S.C. § 44901 because it violates the language of the statute, exceeds the specific technical limitations of AIT passenger screening, and renders 29 U.S.C. § 794 totally void, which is a violation of the Fourteenth Amendment of the U.S. Constitution via reverse incorporation. "[C]urrent versions of AIT

12

do not have the capability to create an image; rather, they create internal code of the passenger using proprietary software." Federal Register, Vol. 81, No. 42, Thursday, March 3, 2016, Pg. 11,383, U. Protection of Images. "The Technology is a security portal that uses millimeter-wave scanning technology to produce three-dimensional images of subjects" (DHS Safety Act Certification renewal, Exhibit A, F-26-E, October 26, 2016). Based on the logical laws, which are propositions true on logical grounds alone, the AIT security portal at issue cannot both, "produce three-dimensional images" and "not have the capability to produce an image". This is a logical contradiction that cannot be reconciled.

**Qualified Immunity:** With regard to qualified immunity for the TSA Administrators, "[t]he question is whether a reasonable state actor would have known that his actions, viewed in the light of the law at the time, were unlawful." *Nabozny v. Podlesny*, 92 F. 3d 446, 456 (7th Cir.1996).

In the Seventh Circuit, claims of qualified immunity are evaluated through a two-step analysis in which the court determines: (1) whether the plaintiffs' claim states a violation of their constitutional rights, and (2) whether those rights were clearly established at the time the violation occurred. S*ee Wilson,* 119 S.Ct. at 1697; *Khuans v. School Dist. 110,* 123 F.3d 1010, 1013 (7th Cir.1997); *Richardson v. McKnight,* 521 U.S. 399, 403, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997); *Sherman v. Four County Counseling Ctr.,*

13

987 F.2d 397, 401 (7th Cir.1993); *Jacobs v. City of Chicago*, 215 F. 3d 758, 766 (7th Cir. 2000).

It is the plaintiffs' burden to demonstrate that a constitutional right is clearly established. See *Kernats v. O'Sullivan,* 35 F.3d 1171, 1176 (7th Cir.1994). A clearly established right is one where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *see Wilson,* 119 S.Ct. at 1700.

Defendant Pistole knew the action he took on September 17, 2010, which directed the use of AIT machines as part of TSA's standard security screening procedures, violated travelers' well-established constitutional right to privacy because AIT passenger screening searched their <u>body cavities</u>.

Defendant Pistole acknowledged his willful wrongdoing through a cryptic and perfectly timed mea culpa on Anderson Cooper's evening CNN show on November 16, 2010, which, unbeknownst to virtually all of the traveling public, only allowed U.S. citizens with standing to challenge the secret September 17, 2010 Order approximately five hours to file a petition for review with a proper Court of Appeals (before being forever barred by the 60 day window and widespread judicial interpretation of Section 46110).

Defendant Pistole knew that using advanced imaging technology to search travelers' body cavities violated their well-established right to privacy

14

because in the year 2010, the contours of the right to privacy were sufficiently clear, and because Defendant Pistole knowingly and willfully made a clear statement that contradicted facts known to him personally, when he stated on November 16, 2010: "obviously this is not, you know, an internal, uh, scanner or screener in any way", and on November 22, 2010: "we're not gonna get in the business of, of doing body cavities", it can only be taken as confirmation that he knew what he did was wrong, and his public statements are then either an attempt to clear a guilty conscience, or alternatively, as happens in "mirror magic", a ritual mocking of the victim.

Defendant Neffenger knew his action on March 3, 2016 to officially adopt the definition of AIT set forth by Congress in Section 44901(l), when he personally knew that AIT in use did not have the capability to create an image, violated traveler's well-established constitutional right to the equal protection of the laws because it totally removed travelers' protections under 29 U.S.C. § 794 in a federal program through the use of artificial intelligence. Defendant Neffenger acknowledged his willful wrongdoing by refusing to disclose that TSA had in fact <u>not</u> adopted the definition of AIT set forth by Congress when it came to <u>practice</u>, because TSA did not change its AIT passenger screening SOP despite the privacy protections mandated by Congress in 2012, codified as 49 U.S.C. § 44901(l). Defendant Neffenger knew that using advanced imaging technology to search travelers' body cavities

15

violated their well-established right to privacy because in March 2016 the contours of the right to privacy were sufficiently clear, and because he also knew that the promulgation of final rule 49 C.F.R. Part 1540 included a definition of AIT that was not an accurate representation of agency policy or practice, it can only be taken as confirmation that he knew what he did was wrong. Otherwise, he would have officially adopted the proposed AIT definition set forth by TSA during the NPRM, which accurately represented the technological reality of AIT passenger screening, including searching body cavities and natural human tissue beneath the surface of the skin.

**Deliberate Indifference:** "The Equal Protection Clause grants to all Americans "the right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). When a state actor turns a blind eye to the Clause's command, aggrieved parties…can seek relief." *Nabozny v. Podlesny*, 92 F. 3d 446, 453 (7th Cir. 1996). "As we explained in *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982): The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a

16

decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group. *Id.* at 1104 (citations and internal quotations omitted). A showing that the defendants were negligent will not suffice. [Plaintiff] must show that the defendants acted either intentionally or <u>with deliberate indifference</u>." *Nabozny v. Podlesny*, 92 F. 3d 446, 453-454 (7th Cir. 1996). Emphasis added.

Federal Defendants acted with willful blindness in their execution of 49 C.F.R. Part 1540 and it was only through their deliberate indifference and willful blindness to the serious problems present in the AIT passenger screening program that Defendants were able to continue their unlawful, outrageous, unconstitutional, and ultrahazardous conduct during AIT passenger screening at domestic commercial airports. Defendants willingly ignored the DHS OIG and knowingly committed Green Book violations in their administration of the TSA checkpoint.

According to the DHS OIG, Defendants failed to monitor the TSA AIT system, including the unauthorized hidden layer of artificial intelligence in use. "The Transportation Security Administration (TSA) does not monitor the Advanced Imaging Technology system (AIT) to ensure it continues to fulfill needed capabilities for detecting non-metallic threat items concealed on air passengers. Specifically, although AIT met the requirement for system

17

availability, TSA did not monitor the AIT system's probability of detection rate and throughput rate requirements set forth in TSA's operational requirements document. These issues occurred because <u>TSA has not established comprehensive guidance to monitor performance of the AIT system.</u>" *See* https://www.oig.dhs.gov/sites/default/files/assets/2020_05/OIG-20-33-May20.pdf (Emphasis added). Defendants' failure to properly carry out legislative mandates has also contributed to known AIT passenger screening problems. The DHS OIG flagged Defendants' failure to implement TSA Modernization Act, Title I, Subtitle B, Sec. 1911 because "Third Party Testing and Verification of Screening Technology" has not been completed. "We recommend TSA designate a lead office responsible for establishing internal controls, conducting oversight, and providing quality assurance, which should improve how it carries out legislative mandates. *See* https://www.oig.dhs.gov/sites/default/files/assets/2021-09/OIG-21-68-Sep21.pdf. Defendants also violated GAO-14-704G Federal Internal Control Standard 12.05 ("green book" pg. 56) by failing to review control activities or monitor equipment in use at the TSA checkpoint after a significant modification to TSA operational policy (changing from the approved production of "visual images" during AIT passenger screening to the unauthorized creation of internal proprietary code of the passenger). *See* https://www.gao.gov/assets/gao-14-704g.pdf. Additionally, Defendants

18

violated GAO-14-704G Federal Internal Control Standard 13.04 ("green book" pg. 59) by turning a blind eye and failing to obtain relevant information regarding the AIT screening program. *See* https://www.gao.gov/assets/gao-14-704g.pdf. Defendants failed to conform to the requirements of OMB Circular A-123, which states in part: "Management is also responsible for establishing and maintaining internal controls to achieve specific internal control objectives related to operations, reporting, and compliance", by failing to establish internal controls for the reporting of standards compliance for the AIT passenger screening program. Defendants' willful blindness toward the details of the AIT passenger screening program violated well-established federal government policies and directly led to Muir's foreseeable injuries. Defendants' failure to monitor the unidentified artificial intelligence in use during AIT passenger screening, despite repeated warnings from the DHS Inspector General, is extreme and outrageous conduct because the failure to supervise the A.I. "Super Agent" deployed during AIT passenger screening simultaneously affects more than two million daily U.S. air passengers.

Defendants acted with deliberate indifference when they willingly chose to sacrifice the clearly-established rights of travelers with disabilities by defying the express will of Congress in order to meet the airline industry's needs through the unauthorized use of artificial intelligence in the TSA AIT passenger screening program, treating travelers with disabilities as though

19

they were not of equal worth in violation of the Equal Protection Clause of Amendment V to the United States Constitution. 29 U.S.C. § 794 states in relevant part: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency." AIT passenger screening is a program conducted by a federal agency. Therefore, statutes implicating federal programs cannot be ignored, 29 U.S.C. § 794 applies to TSA AIT passenger screening, and the objective nullification of Fourteenth Amendment protections via basic principles of computer science renders both qualified immunity and discretionary function exception defenses completely void.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Michael Muir respectfully requests this Court deny Federal Defendants' Motion to Stay.

Dated: October 13, 2022          By:    MICHAEL MUIR, *PRO SE*

                                               _s/Michael Muir_____
                                               Michael Muir
                                               P.O. Box 1791
                                               Sarasota, FL 34230
                                               (712) 309-6121
                                               muirone@yahoo.com