IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MICHAEL MUIR, ) | |
| ) | 8:22-cv-01110 |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES; et al. ) | |
| ) | |
| *Defendants*. ) | |

**PLAINTIFF'S RESPONSE TO FEDERAL DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Michael Muir ("Muir") hereby opposes Federal Defendants' Motion to Dismiss [ECF 38] and in support submits this incorporated memorandum of law.

**MEMORANDUM OF LAW**

The "cast of many" Federal Defendants must remain in this lawsuit because: (1) Muir's claims stem from an order under 6 U.S.C. § 441 *et seq.*, rendering § 46110 inapplicable, (2) 28 U.S.C. § 2680(a) discretionary function and § 2680(h), (c) FTCA waiver exceptions are inapplicable to the challenged conduct, (3) Muir has plausibly stated a claim for a violation of his rights under Amendment V through outrageous conduct which violates the Equal Protection Clause and, (4) Muir's ticket for travel on December 1, 2022 via Allegiant Air Flight 2718 satisfies all Article III standing requirements.

## INTRODUCTION

"In 2001, a bombshell of a book by Edwin Black, *IBM and the Holocaust*, drew on over 20,000 documents unearthed from archives in numerous countries, to describe a twelve-year-old alliance between IBM and the Third Reich. The US joined the war in 1941, but even that late, archival records reveal secret correspondence of IBM higher-ups to set up a Dutch subsidiary, in lieu of the German one, through which the company could continue to supply the Nazis. By then, it was clear just how the Nazis were using IBM's technology, but the company continued to supply them with the capabilities to easily identify Jews and other <u>undesirables</u>." *See* 10 Famous Companies That Collaborated With Nazi Germany (historycollection.com).

"The punch cards, machinery, training, servicing, and special project work… was managed directly by IBM headquarters in New York, and later through its subsidiaries in Germany… Switzerland, and other European countries." *See* https://en.wikipedia.org/wiki/IBM_and_the_Holocaust. In the United States IBM was, at the request of the government, the subcontractor for the Japanese internment camps' punched card project: "His grand design for 1943 was a *locator file*… to include standard information about age, sex… <u>medical history</u>… The punch card project was so extensive and immediate that the War Relocation Authority subcontracted the function to IBM." *See* https://en.wikipedia.org/wiki/IBM_and_World_War_II (Emphasis added).

"In all, between 200,000 and 250,000 mentally and <u>physically handicapped</u> persons were murdered from 1939 to 1945 under the T-4 and other "euthanasia" programs. The magnitude of these crimes and the extent to which they <u>prefigured</u> the "Final Solution" continue to be studied. Further, ethical and moral issues of concern to physicians, scientists, and lay persons alike remain vital." *See* Nazi Persecution of the Mentally & Physically Disabled (jewishvirtuallibrary.org) (Emphasis added).

Muir's private health information chattel representing his hidden human tissue disability beneath his skin that can be used to identify him, *see* https://acieurope.org/downloads/resources/Open%20Architecture%20for%20Airport%20Security%20Systems_1st%20Edition.pdf, must be returned to him as <u>none</u> of the <u>foreign</u> state authors/endorsers of the *Open Architecture for Airport Security Systems* recognize Muir's rights under U.S. law and their possession of, or access to, Muir's private health data via algorithmic search at the "Multiplexer" (*Id.* at 29), or "assignment" of his "biometrics" to his DHS "enumerator" (85 FR 14805, March 16, 2020), is a serious ongoing harm.

Defendant United States has clearly demonstrated its willingness to ignore human rights violations in what it deemed "noble" efforts to compile "lists" in response to "national security threats", and to enter into clandestine partnerships with multinational technology corporations to pursue agendas outside the purview of the public. This case is proof that history rhymes.

3

Defendant L3 previously represented that: "Requiring L3's QATT to decipher the difference between the two objects ["naturally occurring health condition" vs. "a concealed device which posed a safety threat"] would be to impose an impractical <u>burden</u> that would <u>weaken</u> our Nation's national security apparatus. That is why, contrary to Plaintiff's contention, Congress has imposed no such burden." (*See* D.AZ. Case No. 2:19-cv-05587, Doc. 19, filing system p. 12, emphasis added). This implies: (1) Muir's uncontrollable physical disability makes him "undesirable" to process through airport AIT security screening; (2) his congenital physical "weakness" is a "burden" for the multinational contractor's tech; and (3) Defendants believe that Congress' unambiguous language specifying that AIT produce a "visual image" of the passenger being screened is not a precise direction but simply a suggestion.

Therefore, Muir, a TSA AIT "undesirable", is forced onto the *de facto* "No Fly List" as though he and others with disabilities were not of equal worth because Defendants involved with the TSA AIT scheme <u>knew</u> with substantial <u>certainty</u> that the millimeter wave scanner security portal AIT and artificial intelligence algorithm used to screen air passengers under 49 C.F.R. Part 1540 could not differentiate between natural human tissue beneath the skin and foreign objects on the surface of the skin and, in the "proprietary code" configuration, could <u>not</u> uphold Muir's U.S. Constitutional right to equal protection of the law because A.I. cannot understand disability.

4

## ARGUMENT

### A.    F.R.C.P. Rule 8 – Repleader is Warranted

*Plausibility pleading* under *Twombly* and *Iqbal* required the entirety of the instant Complaint be filed. Arizona and Illinois' tort law (Restatement (2d) of Torts § 876) makes all Defendants involved in the TSA AIT passenger screening scheme liable for each other's conduct, and, due to the technological complexity and deeply interconnected nature of the TSA Checkpoint (federal statutes, state tort law, private common carrier ticket, private insurance carrier QATT insurance, multinational/private defense contractor advanced technology security portal, hidden-layer A.I. developed with taxpayer funds, federal government administrative security forces, local law enforcement), it took sixty thousand words to explain, in detail sufficient to survive a Rule 12 challenge, Defendants' own convoluted AIT security scheme to them, as the Court will observe that once repleader is complete, Muir's forthcoming First Amended Complaint will very closely resemble the simple and plainly stated complaint Muir filed against Defendant L3 in Arizona on December 2, 2019.

Defendants refused to acknowledge Muir's plain and simple pleadings and instead chose to mislead and misrepresent fundamental facts about the QATT in their very first motion to dismiss by refusing to acknowledge that the AIT at issue, due to its configuration, did not produce visual images (*See* D.AZ. Case No. 2:19-cv-05887-DGC, Doc. 14, filing system p. 14: "although

5

the TSA may at one point have possessed the image produced by L3's QATT, the TSA would have destroyed the image as soon as Plaintiff was cleared to travel").

Defendant L3 knew with complete certainty that, in August 2018, its QATT did not have the capability to produce an image. Therefore, we must ask why it would make such preposterous representations to the Court, and in doing so, recognize that this conduct, when viewed alongside Defendant Allegiant's voluntary removal of Paragraph 125 from its Contract of Carriage, displays a significant level of <u>unequal knowledge</u> from the traveling public.

### B.   Res Judicata and Collateral Estoppel Defenses Fail

**Res Judicata:** The Contract of Carriage applicable to Muir's August 2018 travel is not the same as the Contract of Carriage applicable to Muir's June 2019 travel, as paragraph 125 was removed (*See* ECF 33). Therefore, the operative contracts are objectively different and claim preclusion fails.

**Collateral Estoppel:** Due to Defendants' obfuscating conduct, a full and fair hearing of the legal issues, has, up to this point, never taken place. Following Defendant L3's January 29, 2020 motion to dismiss, Muir stopped discussing his passenger screening AIT "<u>code</u>" and instead began referring to his private health data representing the human tissue beneath his skin as an "<u>image</u>" in accordance with Defendant L3's representations in its <u>first</u> motion to dismiss. Muir continued to wrongly believe Defendants' representations up

6

to and after the <u>June 5, 2021</u> fax presentation of his FTCA Claims to TSA based on TSA personnel conduct on June 6, 2019 at IWA and June 9, 2019 at PIA that stated: "Muir was terrified and his fear for his immediate physical safety was magnified as he awaited the final and unreviewable outcome of the A.I. search of his passenger screening data **<u>image</u>**") (emphasis added).

Under *Chevron*, 49 C.F.R. Part 1540 is, on its face, an impermissible construction of 49 U.S.C. § 44901(l) for the most basic reason that it does not adhere to the precise unambiguous language of Congress which, following the post-*EPIC* AIT Privacy Protection amendment passed on February 14, 2012, requires that all AIT used during airline passenger screening produce a "visual image" of the individual passenger being screened (*See* ECF 1, p. 35).

### C. Constitutional Claims Satisfy Tort Element Requirements

The Court in the Central District of Illinois held that: "a claim could conceivably sound in both tort and constitutional law" (*See* CDIL Case No. 1:20-cv-01280, Doc. 46, p. 7, n. 3). It appears the Court understood that Muir's FTCA claims utilize U.S. Constitutional violations (not to seek direct money damages but instead to establish Defendants' extreme and outrageous conduct as a necessary element of IIED under Arizona and Illinois common law) because Federal Defendants are federal officers bound by our supreme law, the United States Constitution, and violation of our highest laws via <u>deliberately indifferent</u> *abnormally dangerous* conduct is totally outrageous.

7

### D.     Federal Defendants' F.R.C.P. Rule 12 Defenses Fail

As an initial matter, Muir objects to Federal Defendants summary of Muir's allegations in ECF 1, as Muir only presently claims that he did not and does not consent to have his **private health information** representing the human tissue (inguinal canal) and human tissue disability **beneath the surface of his skin** *irrationally* searched by the AIT artificial intelligence, not, as Federal Defendants incorrectly suggest, that "he claims that he did not consent to be screened by a millimeter wave-based scanner", (*See* ECF 38, p. 4) which is a clear misinterpretation of Muir's pleadings in ECF 1. Muir consented and consents only to be screened in accordance with the law under Section 44901 and the U.S. Constitution and Arizona and Illinois law, which means only a search for potential threat objects on the surface of his skin.

Also, contrary to Federal Defendants' assertion summarizing Muir's statement of facts, Muir's hernia didn't stay "beneath his skin at the exact moment he was processed through AIT" (*See* ECF 38, p. 5), as Muir's hernia is always beneath his skin. The facts are that Muir's internal tissue stayed far enough inside his **body cavity** to not be flagged as an anomaly by the artificial intelligence algorithm. Muir's hernia was completely beneath his skin in 2018 and 2019 because it always has been and always will be based on fundamental human anatomy. This is **evidence** that his internal tissue only triggers a false threat alarm when it moves through his inguinal canal.

**F.R.C.P. 12(b)(1):** This Court has subject matter jurisdiction because while Federal Defendants may have ample discretion with respect to AIT, they are not kings with the absolute power to do as they please. 28 U.S.C. § 2680(a) discretionary function exception does not apply in this case because 49 C.F.R. Part 1540 is an <u>uninsured</u>, facially impermissible construction of Section 44901 under *Chevron*, Federal Defendants' conduct is not of the type Congress meant to protect because matters of <u>science</u> (specifically the inviolable laws of logic, propositional calculus, and computer science) are not shielded by the exception to the waiver of sovereign immunity as "decisions involving the application of objective scientific standards ... are not insulated by the discretionary function exception because they do not involve the weighing of economic, political and social policy." *Kennewick,* 880 F.2d at 1030 (internal quotation omitted)." *In re Glacier Bay*, 71 F. 3d 1447, 1453 (9th Cir. 1995), and the unauthorized use of artificial intelligence (no congressional mandate for TSA to remove the visual image capability of AIT, which *de facto* renders 29 U.S.C. § 794 totally void and therefore, due to deliberate indifference, violates Muir's constitutional right to the equal protection of the laws under Amendment V) is not a decision shielded by the exception. *See*, e.g., *Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009) ("[T]he discretionary function exception does not . . . shield conduct that transgresses the Constitution."); *Raz v. United States*, 343 F.3d 945, 948 (8th

Cir. 2003) (concluding that government's actions "f[e]ll outside the FTCA's discretionary-function exception because [the plaintiff] alleged they were conducted in violation of [the Constitution]"); *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001) ("[F]ederal officials do not possess discretion to violate constitutional rights . . . ." (quoting *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988))); *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) ("The Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply."). The above-cited cases hold that the discretionary function exception will not bar a state law tort claim against the United States when a government employee also violates the U.S. Constitution in the course of committing that tort. See *Loumiet*, 828 F.3d at 945–46 ("A plaintiff who identifies constitutional defects in the conduct underlying her FTCA tort claim . . . may affect the availability of the discretionary-function defense, but she does not thereby convert an FTCA claim into a constitutional damages claim against the government; state law is necessarily still the source of the substantive standard of FTCA liability."); *Limone*, 579 F.3d at 102 n.13 ("[W]e do not view the FBI's constitutional transgressions as corresponding to the plaintiffs' causes of action—after all, the plaintiffs' claims are not Bivens claims [against individual federal officers alleging violations of the Constitution]—but rather, as negating the discretionary function defense.").

10

"[T]he Supreme Court has rejected two categorical approaches to this area of law. First, the applicability of the exception does not depend on whether the relevant decision was made by an individual at the "operational" or "planning" level. *See Gaubert,* 499 U.S. at 325-26, 111 S.Ct. 1267. Second, actions that are regulatory or "uniquely governmental" in nature are not automatically covered by the exception by virtue of that designation. *See Berkovitz,* 486 U.S. at 538-39, 108 S.Ct. 1954." *Whisnant v. US*, 400 F. 3d 1177, 1181 - Court of Appeals, 9th Circuit 2005.

"[A] dominant theme in our case law is the need to distinguish between design and implementation: we have generally held that the *design* of a course of governmental action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not." *Whisnant v. US*, 400 F. 3d 1177, 1181 (9th Cir. 2005). "The decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not.... [S]afety measures, once undertaken, cannot be shortchanged in the name of policy." *Bear Medicine,* 241 F.3d at 1215, 1216-17." *Whisnant v. US*, 400 F. 3d 1177, 1182 (9th Cir. 2005).

Once Defendants undertook the AIT screening program, they were required to do so in accordance with their established policies. See *Kim v. US*, 940 F. 3d 484, 488 (9th Cir. 2019).

11

On February, 14, 2012, Congress, via enactment of Pub. L. 112–95 § 826 (126 Stat. 132, Feb. 14, 2012), *Privacy Protections for Air Passenger Screening with Advanced Imaging Technology*, codified as 49 U.S.C. § 44901(l), placed explicit limitations on the screening of air passengers using AIT, and its precise, unambiguous language which defined advanced imaging technology ("AIT") as "a device used in the screening of passengers that creates a <u>visual image</u> of an <u>individual</u> showing the <u>surface</u> of the skin and revealing other objects <u>on</u> the body" speaks directly to the **design** of AIT.

This design phase is where any choice by the Federal Defendants to eliminate the visual image would be taken, but in the instant case their choice to modify the AIT cannot be shielded by the discretionary function exception because, under *Chevron*, the agency must give effect to every word of the statute, including the words "visual image". Simply put, in removing the "visual image" capability and changing to the "proprietary code" AIT configuration, Federal Defendants exceeded their agency authority, violated the precise language of Section 44901(l), and in doing so, violated Muir's Constitutional right to the equal protection of the laws under Amendment V.

Rehabilitation Act Section 504, codified as 29 U.S.C. § 794, is the established policy for all federal programs and is therefore binding on the TSA AIT passenger screening program, and even if the AIT system requires officials to make difficult choices, it still does not ask them to make *policy*

12

choices regarding 29 U.S.C. § 794's applicability and it does not afford them an opportunity to view the inviolable laws of physics and computer science based on their social, economic, or political views as the government cannot identify even a single policy-based consideration that might influence the laws of logic, propositional calculus or computer science.

Defendant United States is not entitled to the 28 U.S.C. § 2680(a) discretionary function exception with respect to IWA TSA Supervisor John Doe's conduct at IWA on June 6, 2019 or PIA TSA Supervisor John Doe's conduct at PIA on June 9, 2019 because the execution of the TSA AIT passenger screening program under 49 C.F.R. Part 1540 by TSA Supervisors at commercial airports in the United States is not discretionary and involves no room for choice or judgment. See *Gaubert* at 322.

Defendant United States is not entitled to the 28 U.S.C. § 2680(a) discretionary function exception with regard to Former Administrators' or Defendant Pekoske's challenged conduct because removal of the AIT "visual image" was not an available choice, and Muir's claims involve a challenge not to the design of the AIT program as clearly and precisely defined by Congress in 49 U.S.C. § 44901(l), but the application of *objective* scientific standards in the field of computer science knowledge and practices, and the unlawful, abnormally dangerous, and recklessly indifferent implementation of the AIT passenger screening program under 49 C.F.R. Part 1540. See *Gaubert* at 322.

13

28 U.S.C. § 2680(h) exceptions to the waiver do not apply because the Federal Defendants' challenged conduct stems completely from the reckless abuse of power (violating *Chevron*, which left <u>all</u> air passengers <u>uninsured</u> in the event of an act of terrorism) established by an order <u>not under Title 49</u>, but <u>Title 6</u> - *Support Anti-Terrorism by Fostering Effective Technologies Act of 2002* ("SAFETY Act") (6 U.S.C. § 441 *et seq.* (2018), which places Muir's claims <u>outside</u> the scope of § 46110, and Muir's IIED claims are predicated <u>not</u> on assault and battery but on the abuse of power (violating *Chevron*), abnormally dangerous conduct (using A.I. without a mandate), deliberate indifference (invidious classification of "undesirable" travelers with disabilities for being "impractical" and "difficult" to process with AIT due to their uncontrollable lack of conformance with an "ideal" human form for algorithmic comparison), and property rights violations under U.S. Const. Amend. V.

**F.R.C.P. 12(b)(6):** Muir has plausibly stated a claim upon which relief can be granted because he has clearly demonstrated: (1) Art. III standing for injunctive and declaratory relief (*see* Section G. below), (2) Section 46110 is inapplicable because all claims are based on documents created and orders issued under Title 6, (SAFETY Act, 6 U.S.C. § 441 *et seq.* (2018)) <u>not</u> Title 49 (*see* Section E. below), (3) Muir's FTCA IIED Claims 4 and 8 are based on abuse of power and deliberate indifference, not assault and battery, and are

14

therefore not excepted from the waiver of sovereign immunity under 28 U.S.C. § 2680(h), (4) Claim 22 (strict liability for abnormally dangerous activity against Defendant United States under FTCA (Restatement (2d) of Torts §§ 519, 520)), clearly satisfies the requirements for the Section 46110 exception due to foundation in an order from Title 6, and brings along, via common law Restatement (2d) of Torts § 876, all other intentional tort claims (Conversion, Claims 1 and 2; trespass upon chattels, Claim 3; intrusion upon seclusion, Claims 5 and 6; and public disclosure of private facts, Claim 7) also founded in a Title 6 order with abuse of (non-L.E.O.) power and deliberate indifference leading to abnormally dangerous activity, (5) Amendment V Substantive Due Process Property claim necessitates Muir's Petition for a Writ of Digital Habeas Corpus (*see* ECF 1, p. 83) as the "**Multiplexer**", the physical location where all AIT and other security scan data is collected and searched is an Orwellian nightmare in the making. Defendant L3's AIT cannot be configured to meet U.S. legal standards, either under Section 44901(l) or the Equal Protection Clause of the U.S. Constitution. TSA's endorsements of a plan to share data with foreign countries not bound by the United States Constitution does not render Muir's rights null and Federal Defendants must not be allowed to transfer Muir's private data as TSA is not authorized to share Muir's private health data that is improperly obtained for domestic travel AIT passenger screening purposes, with foreign entities.

15

### E. 49 U.S.C. § 46110 Funneling is Avoided

At bottom, Section 46110 is inapplicable and this Court has jurisdiction over Muir's claims because all of Muir's claims stem from documents created and orders issued with respect to the SAFETY Act under Title 6, not Title 49. Abnormally dangerous activity is proven by the fact that Defendant L3 did not obtain the required liability insurance for the AIT in use, which rests on the true and accurate copies of the Safety Act Certification and Designation (*see* ECF 1, p. 85 – 90, 266 – 282) provided by DHS.

Because § 46110 is restricted to orders under Title 49, and Federal Defendants cannot ignore the 6 U.S.C. § 441 *et seq.* SAFETY Act or the DHS' role in Federal Defendants' deliberate indifference in creating the abnormally dangerous activity inherent in 49 C.F.R. Part 1540, Muir's claims clearly avail themselves of the narrow limitation in Section 46110 jurisprudence.

### F. Muir's 49 U.S.C. § 46110 Constitutional Challenge is Viable

Muir's constructional challenge to Section 46110 is viable because it is properly brought (the 60-day time window applies to challenging a TSA order under Section 46110 in the court of appeals, not to challenging § 46110 itself) and arises from the First Amendment right to petition the government for redress, which stems from the wrongful preclusion of his ability to obtain money damages under FTCA and Illinois tort law (Restatement (2d) of Torts §§ 519, 520, 876) in U.S. District Court based on orders and documents

implicating Title 6 (Defendant L3's October 26, 2016 Safety Act Certification and Designation, *see* ECF 1, p. 266) against the private Defendants (Allegiant and L3Harris) acting in concert with Federal Defendants at the Checkpoint.

### G. Muir has Standing for Injunctive and Declaratory Relief

Muir has Article III standing for the injunctive and declaratory relief he seeks because he has plausibly alleged both a constitutional wrong against Federal Defendants (*Milliken v. Bradley*, 418 U.S. 717, 745 (1974)), and a real and immediate threat of future injury (*Lyons*, 461 U.S. 95, 101 (1983)).

**Constitutional Wrongs:** Muir has clearly demonstrated, using the irrefutable laws of nature, logic, and computer science, that it is technically impossible for Federal Defendants to uphold his right to the equal protection of the laws under Amendment V to the United States Constitution (through reverse incorporation via *Bolling*) at the TSA Checkpoint because the A.I. in use cannot recognize human disability, which renders 29 U.S.C. § 794 moot, which violates the Equal Protection Clause via Muir's invidious classification.

Muir has also clearly demonstrated a property right violation under U.S. Constitution Amendment V. Muir's property rights are created under Illinois law, which includes BIPA, and upheld by Amendment V. Muir's ePHI "biometric identifiers" are his private property and must be returned to him. The irrefutable **evidence** that Muir's AIT scans contain private health information chattel is based on Muir's direct experiences with Federal

17

Defendants' <u>irrational</u> conduct searching the AIT scan code representing Muir's human tissue (inside his body cavity at his inguinal canal) beneath the surface of his skin for foreign objects on the surface of his skin, as "[t]he fact that Plaintiff [Muir] is only selected for a physical pat-down when he becomes symptomatic" (*See* Case No. 21-1312, Doc. 20, p. 40) means that Federal Defendants themselves agree that the AIT *de facto* searches data representing natural human tissue inside Muir's body cavity, which is outside the scope of a <u>statutorily</u> permissible AIT passenger screening search based on the Congress' precise language in 49 U.S.C. § 44901(l).

**Art. III:** Muir is scheduled to fly on Thursday, December 1, 2022 via Allegiant Air from St. Petersburg Clearwater International Airport (PIE) in Florida to Peoria International Airport (PIA) in Illinois (Flight No. 2718, Seat 27B). Muir is and will be significantly inhibited in his ability to access the sterile area at PIE and PIA due solely to the unlawful and unconstitutional taking of his private health data representing his human tissue beneath his skin, the subsequent guaranteed <u>irrational</u> search of his private health data representing the human <u>tissue</u> beneath the surface of his skin, and finally, the guaranteed misidentification of the manifest symptoms of his hidden physical disability (at his inguinal canal, <u>inside</u> his body cavity) beneath his skin at his right groin as a threat object <u>on</u> the <u>surface</u> of his skin at his right groin by the AIT in use under 49 C.F.R. Part 1540 at the TSA Checkpoint.

18

Therefore, Muir has Art. III standing for the injunctive and declaratory relief he seeks because he has demonstrated: (1) a real and immediate threat of future injury (guaranteed physical and or emotional harm, and or civil fines and penalties, arrest, and criminal fines and penalties), (2) continuing present adverse effects (severe inhibition in approaching any TSA Checkpoint as Muir <u>cannot</u> know if he is symptomatic to the level required to trigger a false threat alarm at his right groin due solely to his disability until <u>after</u> he has been scanned), and (3) date and time certain "concrete" plans to travel by air on Thursday, December 1, 2022 at 6:10 a.m. (*See* ECF 38, p. 25, n. 11).

## CONCLUSION

For the foregoing reasons, Plaintiff Michael Muir respectfully requests that this Court deny Federal Defendants' Motion to Dismiss.

Dated: October 28, 2022     By:   MICHAEL MUIR, *PRO SE*

_s/Michael Muir_____
Michael Muir
P.O. Box 1791
Sarasota, FL 34230
(712) 309-6121
muirone@yahoo.com