IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MICHAEL MUIR, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>UNITED STATES; et al. )<br>)<br>*Defendants*. ) | 8:22-cv-01110 |

**PLAINTIFF'S RESPONSE TO FORMER ADMINISTRATORS'
MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Michael Muir ("Muir") hereby opposes Former Administrators' Motion to Dismiss [ECF 39] and in support submits this incorporated memorandum of law.

**MEMORANDUM OF LAW**

Former TSA Administrators John S. Pistole and Peter V. Neffenger must remain in this lawsuit because: (1) Muir's *Bivens* claims are timely under FTCA and the continuing violations theory, (2) Muir's *Bivens* claims against Former Administrators are founded on common law *strict* liability, not *vicarious* liability, (3) extension of *Bivens* is necessary to preserve the separation of powers in the new age of advanced technology, and (4) qualified immunity is unavailable to the Former Administrators due to their deliberate indifference and irrational conduct in violation of clearly established law.

# INTRODUCTION

While "[m]atters intimately related to … national security" are "rarely proper subjects for judicial intervention," *Haig v. Agee,* 453 U.S. 280, 292 (1981), because "[n]ational-security policy is the <u>prerogative of the Congress</u> and President," *Abbasi*, 137 S. Ct. at 1861 (emphasis added), this Court must depart from the presumption against extending *Bivens* and intervene here because of the major issues presented by the Former Administrators <u>ignoring Congress</u> through the unauthorized use of uninsured artificial intelligence.

Although the Court in the Central District of Illinois could "conceive of no possible scenario in which the United States officials had or breached the duty Plaintiff argues was owed to him", this Court is not bound by the same limits on information about the TSA AIT passenger screening scheme that the Central District was, and is certainly not confined to the limits of that Honorable Court's vision of advanced technology use in the past or the future.

> *O, pardon me, thou bleeding piece of earth,*
> *That I am meek and gentle with these butchers!*
> *Thou art the ruins of the noblest man*
> *That ever livèd in the tide of times.*
> *Woe to the hand that shed this costly blood!*
> *Over thy wounds now do I prophesy—*
> *Which, like dumb mouths, do ope their ruby lips*
> *To beg the voice and utterance of my tongue—*
> *A curse shall light upon the limbs of men.*
> *Domestic fury and fierce civil strife*
> *Shall cumber all the parts of Italy.*
> *Blood and destruction shall be so in use,*

> *And dreadful objects so familiar,*
> *That mothers shall but smile when they behold*
> *Their infants quartered with the hands of war,*
> *All pity choked with custom of fell deeds,*
> *And Caesar's spirit, ranging for revenge,*
> *With Ate by his side come hot from hell,*
> *Shall in these confines with a monarch's voice*
> **Cry "Havoc!" and let slip the dogs of war,**
> *That this foul deed shall smell above the earth*
> *With carrion men, groaning for burial.*

- Antony, *The Tragedy of Julius Caesar*, Act 3 Scene 1.

The unfortunate "scenario" which the Central District of Illinois could not, given what could be known at the time of ruling, conceive of is as follows: Former Administrators "*let slip the dogs of war*" (released the A.I.), but they did not cry "*havoc*". Instead, they did everything they could to obfuscate their and Defendant L3's intentional conduct, and Muir's prior characterization of the narrow artificial intelligence algorithm used at the TSA Checkpoint as a "cat out of the bag" must be restated because, even though the unmonitored A.I. deployed as the final decision maker in the TSA AIT threat assessment process has the common sense of a house cat, it is actually more accurately described as an unleashed **"dog of war"** (the algorithm was first used in active theaters of war) allowed to roam totally free and unchecked while also wielding final and unreviewable authority in identifying potential threat anomalies during AIT searches in public facilities of interstate commerce.

Muir makes no claims implicating or requiring the theory of *respondeat superior* in the instant Complaint. Arizona and Illinois apply strict liability

for **dog bites**, product design defects, and <u>abnormally dangerous activity</u>. As such, this Court should hold these two Former Administrators accountable for their conduct in knowingly creating the advanced technology architectural barrier and ongoing abnormally dangerous activity (*see* ECF 1, p. 196 - 215) that unlawfully prevents Muir from traveling between the several states by air due solely to his qualified disability, as it is a clear example not of the "wisdom" required of our most <u>trusted</u>, highest level officials, but instead of the unparalleled hubris of power-drunk, uniformed-yes-men who couldn't pass 101-level courses in logic or anatomy. Former TSA Administrators' abnormally dangerous mindset is clearly <u>evidenced</u> by their deliberate indifference to the guaranteed effects of their decision to eliminate from AIT the "visual image" precisely required by 49 U.S.C. § 44901 (a clear *Chevron* violation and also a clear violation of the law of non-contradiction, a well-established law of propositional calculus), which, as a direct consequence, totally eliminated the possibility for the equal protection of the laws under Amendment V for travelers with hidden disabilities through the complete nullification of 29 U.S.C. § 794 because A.I. cannot understand human disability (a clear violation of the well-established laws of computer science), and the AIT in use cannot differentiate between human tissue beneath the skin and potential threat objects on the surface of the skin (a clear violation of the well-established definitions of fundamental human anatomy).

4

Former TSA Administrators abused their power and exceeded their authority, and because their challenged conduct escapes § 46110, and is not shielded by the 28 U.S.C. § 2680(a) discretionary function exception due to the total lack of policy influence their decision making can have on the inviolable laws of nature, propositional calculus, and computer science, and because their deliberate indifference to travelers with hidden disabilities had the effect of invidious classification due to their "undesirable" status as "difficult" to process through AIT passenger screening, Defendants Former Administrators must remain in this lawsuit.

Additionally, TSA Officers are not law enforcement officers and are therefore not entitled to the 28 U.S.C. § 2680(c) exception to the waiver of sovereign immunity for property loss, and 28 U.S.C. § 2680(h) exceptions do not apply to Former Administrators' challenged conduct because Muir's claims are rooted not in assault and battery, but abuse of power and reckless indifference in the outrageous violation of precise statutory language.

## ARGUMENT

### A.   Muir's Claims are Timely under FTCA

Muir's claims against the Former Administrators are timely because he timely filed his claims with TSA on June 5, 2021, within the two year statute of limitations and according to the required administrative process set forth in 28 U.S.C. §§ 1346(b), 2671 *et seq.* (*see* ECF 1, p. 29 – 32), and because

Former Administrators' challenged conduct arises from the same conduct, transaction, or occurrence as the challenged conduct at the heart of Muir's FTCA claims against Defendant United States (strict liability for abnormally dangerous conduct under Restatement (2d) of Torts §§ 519, 520, all claims must be brought together in the instant complaint according to the well-established administrative process mandated by Congress because, under the *Supremacy Clause* of the United States Constitution, art. VI, cl. 2, FTCA controls the instant action.

Muir also faces an ongoing, significant chilling effect with regard to the AIT passenger screening scheme at commercial airports in the United States, and as a result is unable to access the commercial airport sterile area at PIE in order to board his December 1, 2022 Allegiant Air flight from PIE to PIA. Therefore, as stated in ECF 1, p. 173, the continuing violations theory allows Muir to reach back into the past to the first violation in the causal chain of events which gave rise to the ongoing advanced technology architectural barrier currently deployed at TSA Checkpoints.

### B.     Former Administrators had Direct Personal Involvement

Muir's claims are based on common law *strict* liability, not *vicarious* liability, and Muir makes highly-specific, non-formulaic, date-certain allegations with respect to each Former Administrator's direct personal involvement in Muir's claims.

**Defendant Pistole:** It is undisputed the TSA Administrator <u>personally</u> approves the TSA SOP. In the instant case, on May 16, 2013, Defendant Pistole <u>personally</u> approved the completion of the removal, from airports, of <u>all</u> AIT units that could not accommodate automatic target recognition ("ATR") software, a "software solution" that "eliminates passenger-specific images" (81 FR 11369).

This is affirmative conduct for the express purpose of prearranging the conditions of the unacknowledged significant equipment modification which would soon take place under <u>6 C.F.R. § 25.6(l)(2)</u> - *Significant Modification of Qualified Anti-terrorism Technologies*, leaving air travelers uninsured.

**Defendant Neffenger:** On March 3, 2016, Defendant Neffenger <u>personally</u> approved the promulgation of final rule 49 C.F.R. Part 1540, *Passenger Screening Using Advanced Imaging Technology,* in Federal Register Vol. 81, No. 42., which noted that "current versions of AIT do not have the capability to create an image; rather, they create internal code of the passenger using proprietary software" (81 FR 11383).

Defendant Neffenger <u>knew</u> that <u>his</u> <u>action</u> on March 3, 2016 to officially adopt the <u>statutory</u> definition of AIT set forth by Congress in Section 44901(l) as part of the promulgation of final rule 49 C.F.R. Part 1540 was an abuse of power because he included a definition of AIT that was not and could not, due to the laws of nature, be an accurate representation of agency <u>practice</u>.

7

### C. Extension of Bivens is Necessary

The Court should extend *Bivens* in this case because of the separation of powers questions inherent in Defendants' willing violation of Congress' precise statutory language, and the novel, unique nature and far-reaching implications the use of artificial intelligence has for future generations of American citizens. In *West Virginia v. EPA*, 597 U.S. \_\_\_\_ (2022), Justice Gorsuch characterized the major questions doctrine as a clear statement rule developed to ensure judicial adherence to the constitutional principle of separation of powers, similar to the clear statement rules on waivers of sovereign immunity. The major questions doctrine could be used to challenge a variety of ambitious agency actions, and in invoking the major questions doctrine "label," the Court cited "an identifiable body of law that has developed over a series of significant cases all addressing a particular and recurring problem: agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted." Where an agency asserts a new power after long interpreting a statute more narrowly, that warrants skepticism. Courts may limit the application of the doctrine to cases that involve statutory provisions that can be characterized as *ancillary backwaters* (see *Open Architecture for Airport Security Systems*), or where an agency has clearly strayed from its traditional area of expertise (Former TSA Administrators knowingly ordering the unlawful search of body cavity data).

8

### D. Qualified Immunity is Unavailable

Defendants Former Administrators Pistole and Neffenger are not entitled to qualified immunity because their challenged personal conduct violated clearly established <u>statutory</u> <u>rights</u> of which every reasonable person would have known." See *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under *Pearson v. Callahan,* 555 U.S. 223, 232, 237-42 (2009), it's clear that Muir has alleged: (1) a violation of a statutory right by Defendants Former Administrators, and (2) that the statutory right at issue, Section 44901(l)(1), was 'clearly established' at the time of defendant's alleged misconduct." Id. at 232 (citations omitted).

Former Administrators Pistole and Neffenger's conduct violated clearly established law because, in 2013, the contours of air passengers' <u>statutory</u> privacy rights were sufficiently clear as provided in Pub. L. 112–95 § 826 (126 Stat. 132, Feb. 14, <u>2012</u>), *Privacy Protections for Air Passenger Screening with Advanced Imaging Technology* that every reasonable official would have understood that what <u>he is doing</u> violates that right by ignoring <u>the precise language</u> of Congress and removing the individual *visual image* capabilities of AIT in use at commercial airports in the United States.

Defendant Pistole knew or should have known that <u>his</u> personal <u>conduct</u> on May 16, 2013 to oversee completion of the removal, from airports, of all AIT units that could not accommodate automatic target recognition

9

("ATR") software, a "software solution" that "eliminates passenger-specific images" (81 FR 11369) violated clearly-established law because Congress mandated, in February, 2012, a visual image of the individual passenger being scanned, and his conduct could only be viewed as necessarily pre-arranging the unauthorized post-*EPIC*, 2016 AIT configuration modification.

Defendant Neffenger knew or should have known that his action on March 3, 2016 to officially adopt the statutory definition of AIT set forth by Congress in Section 44901(l) (Section 44901(l)(1) states: "In this subsection, the following definitions apply: (A) Advanced imaging technology.—The term "advanced imaging technology"— (i) means a device used in the screening of passengers that creates a visual image of an individual showing the surface of the skin and revealing other objects on the body (emphasis added)), when Defendant Neffenger personally knew that the AIT in use did not have the capability to create an image, and searched human tissue beneath the skin, which was a violation of Muir's statutory privacy rights precisely stated by Congress (see *Privacy Protections for Air Passenger Screening with Advanced Imaging Technology*).

Defendant Neffenger acknowledged his willful wrongdoing by refusing to disclose that TSA had in fact not adopted the definition of AIT set forth by Congress when it came to practice because TSA did not change its AIT passenger screening SOP set forth on September 17, 2010 by Defendant

10

Pistole, despite the statutory privacy protections mandated by Congress in February, 2012, codified as 49 U.S.C. § 44901(l).

Defendant Neffenger knew that using advanced imaging technology to search travelers' body cavities violated their <u>statutory right to privacy</u> because in March 2016, the contours of that February 2012 right to privacy statutory amendment were sufficiently clear, and because he also knew that the promulgation of final rule 49 C.F.R. Part 1540 included a definition of AIT that was not an accurate representation of agency policy or practice, it can only be taken as confirmation that he knew what he did was wrong, or else he would have officially adopted the AIT definition set forth by TSA during the NPRM, which accurately represented the technological reality of AIT passenger screening, which clearly includes irrationally searching travelers' body cavities and human tissue beneath the surface of their skin.

**Deliberate Indifference**

"The Equal Protection Clause grants to all Americans "the right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). When a state actor turns a blind eye to the Clause's command, aggrieved parties…can seek relief." *Nabozny v. Podlesny*, 92 F. 3d 446, 453 (7th Cir. 1996). As the Court explained in *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982), the gravamen of equal protection lies not in the

11

fact of deprivation of a right but in the <u>invidious classification</u> of persons aggrieved by the state's action, and Muir must demonstrate intentional discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group. *Id.* at 1104 (citations and internal quotations omitted). A showing that the defendants were negligent will not suffice. Muir must show that the defendants acted either intentionally or <u>with deliberate indifference</u>." See *Nabozny v. Podlesny*, 92 F. 3d 446, 453-454 (7th Cir. 1996). Emphasis added.

As <u>every</u> *reasonable* officer would have <u>known</u> for <u>certain</u> that what each of the Former Administrators was doing in unleashing the artificial intelligence (with respect to the Equal Protection Clause, 29 U.S.C. § 794, and the AIT passenger screening program) violated the <u>well-established</u> laws of nature, logic, and computer science, and because Former Administrators: (1) acted with deliberate indifference when they willingly chose to sacrifice, for travelers with hidden disabilities, the clearly-established right to the equal protection of the laws, and, (2) defied the express will of Congress in order to meet the productivity needs of the airline industry through the unauthorized use of <u>uninsured</u> artificial intelligence in the AIT passenger

12

screening program, which intentionally creates an invidious classification of individuals with disabilities as "undesirables" due to the inherent "difficulty" in processing them through Defendant L3's AIT, as though they were not of equal worth in violation of the Equal Protection Clause of Amendment V to the U.S. Constitution via reverse incorporation.

## CONCLUSION

For the foregoing reasons, Plaintiff Michael Muir respectfully requests that this Court deny Former Administrators' Motion to Dismiss.

Dated: October 28, 2022            By:   MICHAEL MUIR, *PRO SE*

_s/Michael Muir_____
Michael Muir
P.O. Box 1791
Sarasota, FL 34230
(712) 309-6121
muirone@yahoo.com